J-E02001-18

2018 PA Super 340

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FREDERICK ANDREW POSTIE | : | |
| | : | |
| Appellant | : | No. 93 MDA 2017 |

Appeal from the Order Entered January 4, 2017
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0001119-2012

BEFORE: GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
McLAUGHLIN, J.

OPINION BY GANTMAN, P.J.: **FILED DECEMBER 12, 2018**

Appellant, Frederick Andrew Postie, appeals *pro se* from the order entered in the Schuylkill County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this case are as follows. On October 29, 2013, a jury convicted Appellant of multiple counts of conspiracy, burglary, and other related offenses, in connection with four properties in Rush Township. The trial evidence showed how Appellant and his cohorts, Stephanie Keck and Kerry Frank, chose four properties, which appeared to be uninhabited and in the process of renovations or otherwise under construction,

_____

[1] 42 Pa.C.S.A. §§ 9541-9546. Appellant's *pro se* status on appeal is addressed and resolved later in this decision. **See** FN 4.

to strip them of tools, copper pipes, wiring, and other items to sell for money or drugs.

Specifically, the Commonwealth presented testimony from, *inter alia*, Ms. Keck and Mr. Frank, who both received negotiated plea deals in exchange for their testimony. They testified that Appellant had the idea to burglarize the homes because he knew no one was living in them. Ms. Keck and Mr. Frank explained how Appellant deactivated the brake lights on Ms. Keck's vehicle before the burglaries so no one would see them approaching the houses. Ms. Keck was the "look out" and Mr. Frank was the "muscleman." Ms. Keck said they wore gloves to avoid leaving fingerprints, and Appellant told her to keep the butts of any cigarettes she smoked during the burglaries so there would be no DNA left on the properties. After the burglaries, Appellant and Ms. Keck went to a scrap yard to sell the copper pipes, wiring, and other materials they had harvested. Appellant retained fifty percent of all money received; Ms. Keck and Mr. Frank split the remainder. Appellant, Ms. Keck, and Mr. Frank also stole tools from one property, which they sold for drugs. (*See* N.T. Trial, 10/28/13, at 139-241).

The two police officers, who interviewed Appellant about the crimes, testified that Appellant admitted his involvement in the burglaries. Sergeant Frederick described Appellant as "almost boastful" about his role in the offenses. He told the officers that Ms. Keck and Mr. Frank chose the properties to burglarize because they knew which ones were vacant from their respective

jobs as a newspaper deliverywoman and trash collector. Appellant also said they wore gloves to avoid detection. During Sergeant Frederick's testimony, the Commonwealth introduced a written statement Appellant had given to police. Sergeant Frederick read aloud the relevant portions of Appellant's handwritten statement as follows:

> I'm not certain of prior activity Kerry Frank or Stephanie Keck were involved [with]. Sometime within the last year, Frank and Keck approached me because Frank saw a few houses that were vacant and had the idea of entering them and removing/selling copper and/or wires. Frank knew the homes were vacant because he would remove trash from the surrounding areas and took notice to the ones that were not occupied. Keck delivered newspapers in a wide area around the…rural county areas and often knew where there were homes for sale [or] vacation[.] These houses were in Rush Township. I was asked to help them with these jobs in exchange for a cut of the profits. Houses were typically checked by **me** prior to entering to make sure no one was currently occupying the property. Typically after the metals were harvested, either Frank or Keck would deliver [it] to the scrap facility. I did attend the process on more than a few occasions in Pottsville and a facility near Allentown. [O]n at least two occasions in Rush Township[, I was] summoned by Keck to a house to help harvest. One was on Main Street and the other was on 309. [A p]roperty on Fairview Street produced copper, …rods and wire.

(*Id.* at 260-61) (emphasis added for later discussion). Both police officers conceded on cross-examination that Appellant's written statement gave less detail than the officers' testimony about what Appellant had actually said during the interview. (*See id.* at 241-71).

Appellant testified in his own defense and denied any involvement in the burglaries. Appellant maintained Ms. Keck had approached him about the

burglaries, but Appellant refused to participate. Appellant claimed Ms. Keck summoned him to the properties on two occasions, under false pretenses. On the one occasion when Appellant went to the location Ms. Keck described and discovered Ms. Keck and Mr. Frank in the midst of a burglary, Appellant said he yelled at Ms. Keck for burglarizing a home situated so close to his own home. Appellant admitted he had helped Ms. Keck unload some of the stolen property at a scrap yard following one of the burglaries because she was pregnant and could not lift the materials. Appellant insisted he did not admit his involvement in the burglaries to police at any time and denied implicating himself in his written statement. Importantly, Appellant disputed the portion of Sergeant Frederick's recitation of Appellant's written statement stating: "Houses were typically checked by **me** prior to entering to make sure no one was currently occupying the property." Appellant claimed the word "me," as Sergeant Frederick read it, actually says "one." Appellant submitted his trial testimony was consistent with his written statement concerning his lack of participation in the burglaries. (N.T. Trial, 10/29/13, at 287-330).

Following jury instructions, counsel for both parties brought to the court's attention the dispute regarding Appellant's handwritten statement, specifically over whether the statement said "me" or "one." Counsel agreed the jury should view the statement to resolve the dispute. Appellant's written statement in its entirety included some references to events unrelated to the crimes at issue. The parties agreed to redact the statement so the jury could

view only the portion of the statement Sergeant Frederick had read during his examination, which was relevant to the charges at issue. The court ruled the redacted statement could go out with the jury during deliberations. (**Id.** at 367-68). During defense counsel's closing statement, counsel told the jury it would have an opportunity to review the disputed word in Appellant's written statement to confirm Appellant did not admit any role in the burglaries. (**Id.** at 378-79).

The jury convicted Appellant of two counts of conspiracy and four counts each of burglary, criminal trespass, receiving stolen property, criminal mischief, and theft. The court sentenced Appellant on December 6, 2013, to an aggregate term of 40-132 months' imprisonment plus two years' probation. This Court affirmed the judgment of sentence on January 26, 2015. **See Commonwealth v. Postie**, 118 A.3d 455 (Pa.Super. 2015). On March 26, 2015, Appellant filed a petition for leave to seek allowance of appeal with the Supreme Court *nunc pro tunc*, which the Supreme Court denied on April 24, 2015. Therefore, Appellant's judgment of sentence became final on February 25, 2015, upon expiration of the 30-days permitted to file a petition for allowance of appeal. **See Commonwealth v. Hutchins**, 760 A.2d 50 (Pa.Super. 2000) (holding appellant's judgment of sentence became final upon expiration of 30-day period to file petition for allowance of appeal to Supreme Court from Superior Court's decision affirming judgment of sentence; fact that appellant filed untimely petition for allowance of appeal

*nunc pro tunc* with Supreme Court after expiration of 30-day period, which Supreme Court denied, does not alter date on which Appellant's judgment of sentence became final for purposes of PCRA).

On February 24, 2016, Appellant timely filed his first PCRA petition *pro se*. Appellant alleged, *inter alia*: (1) the trial court erred by failing to hold a hearing to pursue whether Appellant wanted to proceed *pro se* at trial, where Appellant initially indicated he wanted to proceed *pro se* but later changed his mind; and trial counsel was ineffective for failing to request a hearing on this issue; (2) trial counsel was ineffective for failing to seek an instruction that the jury could not consider testimony from one accomplice as "corroborating evidence" of testimony from another accomplice; and (3) trial counsel was ineffective for agreeing to send Appellant's written statement out with the jury during deliberations. Appellant requested appointment of counsel to litigate his PCRA claims. On March 1, 2016, the court granted Appellant *in forma pauperis* ("IFP") status and appointed PCRA counsel.

The Commonwealth filed a response to Appellant's *pro se* PCRA petition on March 30, 2016. Significantly, PCRA counsel did not file an amended petition on Appellant's behalf or seek to withdraw pursuant to **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). On April 1, 2016, the court issued notice of its intent to dismiss Appellant's petition without a hearing per Pa.R.Crim.P. 907.

On August 8, 2016, Appellant filed a *pro se* "Motion for Expedited Disposition." Appellant explained he had sent numerous letters to PCRA counsel, but PCRA counsel did not reply. Appellant indicated PCRA counsel did not seek to withdraw under ***Turner*/*Finley***. Appellant expressed his belief that PCRA counsel had abandoned Appellant. Due to PCRA counsel's abandonment, Appellant said he was forced to assume control over his case to preserve his rights, and chose to ask the court to rule on his petition in an expeditious manner.[2] The PCRA court took no action regarding Appellant's *pro se* motion raising claims of PCRA counsel's abandonment. Instead, the court simply denied PCRA relief on January 5, 2017. Appellant timely filed a *pro se* notice of appeal on January 12, 2017. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a *pro se* Rule 1925(b) statement on January 18, 2017.

Identifying Appellant's *pro se* status on appeal, on January 30, 2017, this Court remanded for a ***Grazier***[3] hearing to determine if Appellant wanted

_____

[2] The court forwarded Appellant's *pro se* motion to PCRA counsel, pursuant to Pa.R.Crim.P. 576. ***See*** Pa.R.Crim.P. 576(A)(4) (stating in any case in which defendant is represented by attorney, if defendant submits written document that has not been signed by defendant's attorney, clerk of courts shall accept it for filing and forward copy of time-stamped document to defendant's attorney and attorney for Commonwealth within 10 days of receipt).

[3] ***Commonwealth v. Grazier***, 552 Pa. 9, 713 A.2d 81 (1998) (holding court must determine on record that indigent defendant wants to proceed *pro se*, to ensure waiver of counsel is knowing, intelligent and voluntary).

to proceed *pro se* on appeal or with PCRA counsel, who was still counsel of record. After conducting a **Grazier** hearing, the PCRA court relieved PCRA counsel and permitted Appellant to proceed *pro se* on appeal.

The original three-judge panel disagreed over disposition of this case. Given the disparate dispositions, this Court granted *en banc* certification on November 29, 2017, and directed the PCRA court to appoint new counsel. On December 1, 2017, the PCRA court appointed new counsel. Appointed counsel filed a petition to withdraw on December 18, 2017, stating Appellant wanted to proceed *pro se*. Appellant filed a *pro se* motion that day confirming his intent to proceed *pro se*. On December 22, 2017, this Court issued an order directing Appellant to notify this Court if he wanted to proceed *pro se* and informing Appellant the case would be submitted on the briefs if he planned to proceed without counsel. Appellant filed his express intent to continue *pro se* on January 16, 2018. Counsel filed a certification with this Court on January 19, 2018, reiterating Appellant's plan to proceed *pro se*. On January 23, 2018, this Court granted counsel's petition to withdraw and permitted Appellant to proceed *pro se* in this *en banc* appeal.[4]

_____

[4] The record makes clear that original PCRA counsel (appointed on March 1, 2016) abandoned Appellant, where counsel did nothing on Appellant's behalf or to withdraw pursuant to **Turner**/**Finley**. **See** Pa.R.Crim.P. 904(C), (F)(2) (explaining court shall appoint counsel to represent indigent defendant on first PCRA petition; appointment shall continue through any appeal from disposition of PCRA petition); **Commonwealth v. Robinson**, 970 A.2d 455 (Pa.Super. 2009) (*en banc*) (discussing appellant's rule-based right to counsel

Appellant raises the following issues in this appeal:

IS THE TRIAL COURT REQUIRED TO HOLD A HEARING FOLLOWING A DEFENDANT'S UNEQUIVOCAL ASSERTION OF HIS RIGHT TO CONDUCT HIS OWN DEFENSE; IS COUNSEL OBLIGATED TO ADVOCATE TO THE COURT FOR THAT DEFENDANT TO EXERCISE THAT RIGHT, AND DID THE PCRA COURT ERR BY DENYING A HEARING TO DETERMINE THIS QUESTION?

DOES A PCRA COURT ERR IN DECLINING TO HOLD A HEARING WHEN IT IS CLEAR ON THE RECORD THAT A PROPER LIMITING INSTRUCTION WAS NOT GIVEN AT A DEFENDANT'S TRIAL AND IS COUNSEL INEFFECTIVE FOR NOT SEEKING THIS INSTRUCTION WHERE THE FACTS OF THE CASE CALL FOR IT, OR FOR NOT OBJECTING TO ITS EXCLUSION BY THE COURT?

IS A PCRA COURT REQUIRED TO FIND COUNSEL INEFFECTIVE FOR AN EXPRESS VIOLATION OF A PENNSYLVANIA RULE OF COURT, SPECIFICALLY PA.R.CRIM.P. 646, IN LINE WITH **COMMONWEALTH V. KARAFFA**, 551 PA. 173, 709 A.2D 887 (1998) AND **COMMONWEALTH V. YOUNG**, 767 A.2D 1072 (PA.SUPER. 2001) AND/OR IS **COMMONWEALTH V. PENROSE**, 669 A.2D 996 (PA.SUPER. 1995)[, *APPEAL DENIED*, 545 PA.

---

on first PCRA petition and stressing importance of counsel in litigating first PCRA petition).  Normally, we would vacate the order denying PCRA relief and remand for the appointment of new independent PCRA counsel to file an amended petition on Appellant's behalf or a proper motion to withdraw and **Turner**/**Finley** no-merit letter.  **See Commonwealth v. Kenney**, 557 Pa. 195, 732 A.2d 1161 (1999) (explaining where indigent petitioner's right to appointment of counsel in prosecuting first PCRA petition has been effectively denied by action of court or counsel, petitioner is entitled to remand for appointment of counsel to prosecute PCRA petition to give petitioner benefit of competent counsel at each stage of post-conviction review); **Commonwealth v. Williams**, 167 A.3d 1 (Pa.Super. 2017) (vacating order denying PCRA relief and remanding for amended PCRA petition on appellant's behalf, where prior PCRA counsel had abandoned appellant).  Nevertheless, Appellant has repeatedly confirmed, following this Court's *en banc* certification, that he wants to litigate his PCRA petition *pro se*.  Consequently, we deem Appellant's *pro se* status resolved and a remand is not required.

669, 681 A.2D 1342 (1996)] STILL GOOD LAW; AND CAN THIS COURT HARMONIZE, DISTINGUISH, OR EXPRESSLY OVERRULE **PENROSE** AS NOT BEING ALIGNED WITH CURRENT SUPREME COURT PRECEDENT DEALING WITH CONFESSIONS GOING OUT TO THE JURY DURING DELIBERATIONS, AND WAS THE PCRA COURT REQUIRED TO HOLD A HEARING TO DETERMINE WHICH CASE CONTROLLED THE OUTCOME OF THIS CASE?

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. **Commonwealth v. Ford**, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. **Commonwealth v. Hardcastle**, 549 Pa. 450, 701 A.2d 541 (1997).

The law presumes counsel has rendered effective assistance. **Commonwealth v. Gonzalez**, 858 A.2d 1219 (Pa.Super. 2004), *appeal denied*, 582 Pa. 695, 871 A.2d 189 (2005). In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Turetsky***, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.[5] ***Id.*** at 880. "The petitioner bears the burden of proving all three prongs of the test." ***Id.***

"A claim has arguable merit where the factual averments, if accurate, could establish cause for relief." ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa.Super. 2013) (*en banc*), *appeal denied*, 625 Pa. 664, 93 A.3d 463 (2014). "[T]he ultimate question of whether facts rise to the level of arguable merit is a legal determination." ***Commonwealth v. Saranchak***, 581 Pa. 490, 511 n.14, 866 A.2d 292, 304 n.14 (2005).

Regarding the second prong of the ineffectiveness test, our Supreme Court has explained:

> [W]e do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if [a]ppellant proves

---

[5] This traditional three-prong analysis is known as the ***Strickland*** ineffectiveness test. ***See Strickland v. Washington***, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

***Commonwealth v. Chmiel***, 612 Pa. 333, 361-62, 30 A.3d 1111, 1127 (2011) (internal citations and quotation marks omitted). Generally, an evidentiary hearing on counsel's strategy is preferred before the PCRA court decides if counsel lacked a reasonable basis for his actions, except in those cases where the reasons for counsel's conduct are clear and apparent from the record. ***Commonwealth v. Hanible***, 612 Pa. 183, 30 A.3d 426 (2011), *cert. denied*, 568 U.S. 1091, 133 S.Ct. 835, 184 L.Ed.2d 662 (2013).

With respect to the prejudice prong, "a reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Ali***, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010). "[T]he prejudice inquiry requires consideration of the totality of the evidence…." ***Commonwealth v. Spotz***, 582 Pa. 207, 228 n.15, 870 A.2d 822, 834 n.15 (2005), *cert. denied*, 546 U.S. 984, 126 S.Ct. 564, 163 L.Ed.2d 474 (2005). Only in the absolute rarest of circumstances may prejudice be presumed.[6] ***Id.*** at 227, 870 A.2d at 834. Further, "boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy

---

[6] In cases involving these rare circumstances, which we will discuss more fully in our analysis of Appellant's third issue, we evaluate a petitioner's claim under a *per se* ineffectiveness standard known as the ***Cronic*** ineffectiveness test, which eliminates a petitioner's requirement to prove the second and third prongs of the traditional ineffectiveness test. ***See United States v. Cronic***, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

a petitioner's burden to prove that counsel was ineffective." ***Chmiel, supra*** at 362, 30 A.3d at 1128.

In his first issue, Appellant argues that prior to trial, he filed a petition to proceed *pro se*, citing his distrust and fractured relationship with counsel. Appellant asserts the trial court failed to conduct a hearing to uncover Appellant's reasons for wanting to proceed *pro se* and whether his intended waiver of counsel was valid. Appellant insists he did not "previously litigate" this claim for purposes of the PCRA because the Pennsylvania Supreme Court refused to rule on the merits of this issue. Even if the claim of trial court error was previously litigated, Appellant contends trial counsel was ineffective for failing to advocate for Appellant's right to proceed *pro se* and secure a hearing on Appellant's request. Appellant maintains trial counsel had no reasonable basis for failing to withdraw his representation and advance Appellant's right to proceed *pro se*. Appellant claims he suffered prejudice because he was denied the opportunity to present a defense of his own choosing. Appellant submits he would not have testified in his own defense at trial if he had represented himself. Appellant concludes the trial court erred by failing to hold a hearing on Appellant's request to proceed *pro se* at trial, counsel was ineffective for failing to advocate for Appellant's right to proceed *pro se*, and this Court must reverse the order denying PCRA relief and grant Appellant a new trial. We disagree.

Preliminarily, to be eligible for relief under the PCRA, a petitioner must

plead and prove by a preponderance of the evidence: "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). The PCRA defines "previous litigation" as follows:

> **§ 9544. Previous litigation and waiver**
>
> **(a) Previous litigation.**—For purposes of this subchapter, an issue has been previously litigated if:
>
> * * *
>
> (2) the highest appellate court in which the petitioner could have had review **as a matter of right** has ruled on the merits of the issue; or
>
> (3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.

42 Pa.C.S.A. § 9544(a)(2-3) (emphasis added). "[A] reviewing court must consider and substantively analyze an ineffectiveness claim as a distinct legal ground for PCRA review because[,] while an ineffectiveness claim may fail for the same reasons that the underlying claim faltered on direct review, the Sixth Amendment basis for ineffectiveness claims technically creates a separate issue for review under the PCRA." *Commonwealth v. Tedford*, 598 Pa. 639, 662, 960 A.2d 1, 14 (2008) (internal citation and quotation marks omitted).

Additionally, "to invoke the right of self-representation, the request to proceed *pro se* must be made timely and not for purposes of delay and must be clear and unequivocal." *Commonwealth v. Davido*, 582 Pa. 52, 64, 868 A.2d 431, 438 (2005), *cert. denied*, 546 U.S. 1020, 126 S.Ct. 660, 163 L.Ed.2d 534 (2005). "[T]he inquiry surrounding whether a request to proceed

*pro se* is unequivocal is fact intensive and should be based on the totality of the circumstances surrounding the request." ***Id.*** at 66, 868 A.2d at 439. "[A] court only needs to conduct an on the record colloquy when there has been a 'timely and unequivocal' request to proceed *pro se*." ***Id.*** at 65, 868 A.2d at 438 (holding appellant did not invoke Sixth Amendment right of self-representation where he wrote pre-trial letter to court seeking new counsel or permission to retain private counsel due to difficulties with current counsel; appellant's request to proceed *pro se* was posed only as alternative if court did not appoint him new counsel; appellant made no clear demand for self-representation; when court subsequently asked appellant if he wanted to proceed *pro se*, appellant said he did not want to represent himself; based on totality of circumstances, appellant's request to represent himself was equivocal, and court did not err in failing to conduct colloquy).

Instantly, Appellant expressly raised, as his second issue on direct appeal, whether the trial court erred and denied Appellant due process by failing to conduct a hearing to address Appellant's petition to proceed *pro se* at trial. This Court considered the issue on the merits and denied relief, explaining Appellant's claim was disingenuous where Appellant appeared for a hearing on his petition to proceed *pro se*, and informed the court he had changed his mind and wanted counsel to continue representing Appellant. Because the Superior Court is the highest court in which Appellant was entitled to review **as a matter of right**, and he obtained merits review on his current

claim of trial court error, Appellant's underlying issue has been "previously litigated" for purposes of the PCRA. *See* 42 Pa.C.S.A. § 9544(a)(2). *See also* 42 Pa.C.S.A. § 724(a) (explaining final orders of Superior Court may be reviewed by Supreme Court upon allowance of appeal by any two justices of Court upon petition of any party to matter; if petition is granted, Supreme Court shall have jurisdiction); 42 Pa.C.S.A. § 5105(b) (stating there shall be no right of appeal from Superior Court to Supreme Court under this section or otherwise).

Regarding Appellant's related but distinct claim of trial counsel's ineffectiveness, which is properly before us, *see Tedford, supra*, the record shows Appellant filed a pre-trial petition for leave to proceed *pro se*, dated July 23, 2013 and filed August 7, 2013. The court forwarded the motion to counsel per Pa.R.Crim.P. 576. On August 15, 2013, counsel filed a motion to withdraw based on Appellant's request to proceed *pro se* at trial. The court held a pre-trial conference the next day. At the conference, counsel informed the court Appellant had filed a petition to proceed *pro se* but had since changed his mind and wanted counsel to continue representing him. The court specifically asked Appellant if he wanted to represent himself; Appellant responded: "Currently, no." (*See* N.T. Pre-Trial Conference, 8/16/13, at 3). Thus, the record belies Appellant's claim that counsel failed to advocate for Appellant's right to proceed *pro se*. To the contrary, counsel filed a motion to withdraw based on Appellant's initial request but **Appellant** subsequently

changed his mind and decided to continue with counsel's representation. Under these circumstances, where Appellant's request to proceed *pro se* was not "clear and unequivocal," the court had no obligation to conduct a colloquy. *See Davido, supra*. Consequently, Appellant's ineffectiveness claim regarding his right to self-representation lacks arguable merit. *See Saranchak, supra*; *Stewart, supra*.

In his second issue, Appellant argues his cohorts, Stephanie Keck and Kerry Frank, were accomplices who testified against Appellant at trial. Appellant acknowledges the court issued the proper "corrupt source" jury instruction regarding their testimony. Nevertheless, Appellant asserts the court failed to give a second limiting jury instruction that accomplice testimony cannot be used to corroborate accomplice testimony. Appellant claims trial counsel was ineffective for failing to request this jury instruction and/or object to its exclusion. Appellant insists the court's jury instruction related to accomplice testimony departed from the suggested standard instruction, which directs the jurors to consider each accomplice's testimony separately and not to consider the testimony of one accomplice as supporting the testimony of the other accomplice. Appellant maintains counsel had no reasonable basis for failing to request the suggested standard instruction on accomplice testimony. Appellant suggests he suffered prejudice because in the absence of the proper jury instruction, the jurors might have improperly considered testimony from Ms. Keck as corroborating the testimony of Mr.

Frank or vice versa. Appellant concludes trial counsel was ineffective for failing to seek the proper accomplice jury instruction, and this Court must reverse the order denying PCRA relief and grant Appellant a new trial. We disagree.

When reviewing a challenge to a jury instruction:

> [W]e must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

*Commonwealth v. Baker*, 963 A.2d 495, 507 (Pa.Super. 2008), *appeal denied*, 606 Pa. 644, 992 A.2d 885 (2010) (internal citation omitted).

> A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

*Id.* Additionally, "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Eichinger*, 631 Pa. 138, 178, 108 A.3d 821, 845 (2014).

"[T]estimony of one accomplice cannot be used to corroborate the testimony of another accomplice." *Commonwealth v. Bennett*, 283 A.2d 724, 725 (Pa.Super. 1971). Thus, "it is reversible error for a trial judge to

allow a jury to infer from his instructions, by negative inference or otherwise, that the testimony of one accomplice may be used to corroborate that of another accomplice." ***Commonwealth v. Almeida***, 452 A.2d 512, 516 (Pa.Super. 1982).

Instantly, the trial court issued the following jury instruction regarding accomplice testimony:

> Now, there are also special rules having to do with accomplice testimony and I'm talking specifically about the testimony of Stephanie Keck and Kerry Frank. A person is an accomplice of another person in the commission of a crime if he or she has the intent of promoting or facilitating the commission of the crime and (1) either solicits the other person to commit it or (2) aids or agrees or attempts to aid such other person in planning or committing the crime. Put simply, an accomplice is a person who knowingly and voluntarily cooperates with or aids another person in committing an offense and those two witnesses certainly would fall within that definition and so when a Commonwealth witness is an accomplice, his or her testimony has to be judged by special precautionary rules. Experience shows that an accomplice, when caught, may often try to place the blame falsely in the hopes of obtaining favorable treatment for...some corrupt or wicked motive. On the other hand, an accomplice may be a perfectly truthful witness. The special rules that I will give you are meant to help you distinguish between truthful and false accomplice testimony.
>
> Now, as I said, in view of the evidence that was presented, Stephanie Keck and Kerry Frank's criminal involvement in these matters do classify them as accomplices in the crimes charged and so these special rules apply to their testimony. These are, first, you should consider the testimony of accomplices with disfavor because it comes from a corrupt and polluted source. Second, you should examine the testimony of accomplices closely and accept it only with care and caution. **And third, you should consider whether the testimony of an accomplice is supported in whole**

**or in part by other evidence. Accomplice testimony is more dependable if supported by independent evidence.** However, even if there was no independent supporting evidence, you may still find the defendant guilty solely on the basis of the accomplices' testimony if, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplices testified truthfully and that the defendant is guilty.

(N.T., 10/29/13, at 338-40) (emphasis added). Defense counsel did not object to the court's instruction. (***Id.*** at 367).

Viewing the jury instruction as a whole, the court's recitation of the law was accurate. ***See Baker, supra***. Nowhere in the court's instruction did the court state or suggest by negative inference or otherwise, that the testimony of one accomplice could be used to corroborate testimony of another accomplice. ***See Almeida, supra***. Rather, the court instructed the jury to consider whether testimony from Ms. Keck or Mr. Frank was supported by "other," "independent evidence." ***See id.*** (holding trial court did not issue erroneous jury instruction where court directed jury to view accomplices' testimony with great scrutiny and to determine whether their testimony was corroborated by "other evidence" in record; court's instruction did not encourage jury to consider testimony of one accomplice as corroborating that of another). The trial court was not required to recite, verbatim, the language used in the suggested standard jury instructions. ***See Eichinger, supra***. Consequently, Appellant's ineffectiveness claim lacks arguable merit. ***See id.*** (explaining counsel is not ineffective for failing to object to jury instruction where instruction is justifiable or not otherwise improper). ***See also***

***Saranchak, supra***; ***Stewart, supra***.

In his third issue, Appellant argues trial counsel improperly permitted Appellant's "confession" to go out with the jury during deliberations. Appellant asserts counsel's actions violated Pa.R.Crim.P. 646, which expressly forbids the jury to have a copy of a defendant's confession during deliberations. Appellant contends trial counsel was *per se* ineffective on this ground. Appellant acknowledges this Court's disposition in ***Penrose, supra***, which considered whether trial counsel had a reasonable basis in permitting a defendant's confession to go out with the jury. Nevertheless, Appellant insists this Court's subsequent decision in ***Young, supra*** established a *per se* ineffectiveness test under similar circumstances and overruled ***Penrose*** *sub silentio*. Appellant suggests any violation of Rule 646 constitutes reversible error and automatic grounds for a new trial. Appellant submits that permitting a jury to hold a defendant's confession during deliberations is inherently prejudicial because the jurors will most likely place undue emphasis on the confession, instead of relying on their collective recollection of the trial testimony and evidence. Appellant concludes trial counsel was *per se* ineffective for allowing the "confession" to go out with the jury during deliberations, and this Court must reverse the order denying PCRA relief and grant Appellant a new trial. We cannot agree, under the circumstances of this case.

Pennsylvania Rule of Criminal Procedure 646 provides, in pertinent part:

**Rule 646.   Material Permitted in Possession of the Jury**

*     *     *

(C)   During deliberations, the jury shall not be permitted to have:

(1)   a transcript of any trial testimony;

(2)   a copy of any written or otherwise recorded confession by the defendant;

(3)   a copy of the information or indictment; and

(4)   except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(C).

In ***Penrose, supra***, this Court considered on **direct appeal** a claim that trial counsel was ineffective for allowing the defendant's written confession to go out with the jury during deliberations.[7]  The Court decided the claim had arguable merit, where Pa.R.Crim.P. 1114 (now Rule 646) prohibited the jury from having a copy of the defendant's written confession during deliberations. Trial counsel testified that sending out the confession with the jury was a strategic trial move because the confession corroborated the defense theories of "heat of passion" or self-defense.  Therefore, the ***Penrose*** Court held the appellant had failed to meet the second prong of the ineffectiveness of counsel

_____

[7] Due to its irregular procedural history, ***Penrose*** involved some direct appeal and some PCRA claims, but the ***Penrose*** Court made clear it was considering the confession issue as a **direct appeal** issue.  ***See Penrose, supra*** at 999.

test, where trial counsel had a reasonable basis for his action. **See Penrose, supra** at 1001.

In the later case of **Young, supra**, this Court considered on **direct appeal** whether the trial court had committed reversible error in allowing the defendant's confession to go out with the jury during deliberations and whether trial counsel was ineffective for failing to object to the Rule 1114 (now Rule 646) violation. Notably, the trial court **declared** it had erred in sending the confession out with the jury and asked the Superior Court to remand for a new trial. The Commonwealth opposed a remand and argued for a harmless error analysis to decide whether a new trial was warranted.

The **Young** Court attempted to distinguish **Penrose** as having been decided under the PCRA ineffectiveness test and "[t]hus, whether to award a new trial for the underlying violation of Rule 1114 [now Rule 646] was not at issue before [the **Penrose**] panel." **Young, supra** at 1075. Instead, the **Young** Court analogized to the Supreme Court's decision in **Karaffa, supra**, which held the jury's possession of written **jury instructions** during deliberations was *per se* reversible error, and a harmless error analysis was inappropriate, given the inherent prejudice involved. The **Karaffa** Court also concluded trial counsel was ineffective for failing to object.[8] As in **Karaffa**,

_____

[8] **Karaffa**, **Young**, and **Penrose** were all decided on direct appeal before the Supreme Court issued **Commonwealth v. Grant**, 572 Pa. 48, 813 A.2d 726 (2002) (holding as general rule claims of ineffective assistance of counsel must await collateral review).

the *Young* Court concluded written confessions were like jury instructions:

"Both types of items should be treated in like manner, as inherently prejudicial

if the rule has been violated, requiring a vacation of the judgment of sentence,

regardless of whether…counsel performed otherwise effectively." *Young,*

*supra* at 1076.

Instantly, the trial court permitted Appellant's handwritten statement

(with agreed-upon redactions) to go out with the jury for deliberations.

Appellant's redacted statement provides:

> I'm not certain of prior activity Kerry Frank or Stephanie
> Keck were involved with.  Sometime within the last year,
> Frank and Keck approached me because Frank saw a few
> houses that were vacant and had the idea of entering them
> and removing/selling copper and/or wires.  Frank knew the
> homes were vacant because he would remove trash from
> the surrounding areas and took notice to the ones that were
> not occupied.  Keck delivered newspapers in a wide area
> around [the] rural county areas an[d] often knew where
> there were homes for sale [or] vacation[.]  These houses
> were in Rush Twp.  I was asked to help them with these jobs
> in exchange for a cut of the profits.  Houses were typically
> checked by **[…]** prior to entering to make sure no one was
> currently occupying the property.  Typically after the metals
> were harvested, either Frank or Keck would deliver it to the
> scrap facility.  I did attend the process on more than a few
> occasions in Pottsville and a facility near Allentown[.]
>
> [O]n at least two occasions in Rush Twp, I was summoned
> by Keck to a house to help harvest.  One was on Main Street
> and the other was on 309.
>
> Wheels was harvested for copper, wire, a pressure washer,
> compressor, and other misc. tools.   [A] property on
> [F]airview…produced copper, rods, [and] wire[.]

(Commonwealth's Trial Exhibit #16 (redacted), dated February 28, 2012, at

1-2) (bolded and bracketed ellipsis added to represent disputed word "me" or "one").

Initially, whether Appellant's written statement even constitutes a "confession" is highly debatable for several reasons: (1) part of Appellant's defense at trial was that his statement exonerated him and was **not** a "confession"; (2) Appellant testified in his own defense that the disputed word said "one," not "me"; the statement did not implicate him in the crimes; and it was wholly consistent with his trial testimony that he was not responsible for the offenses; and (3) the statement sent out with the jury was redacted, so the jury saw only the limited portion at issue. In light of Appellant's position at trial, Appellant has arguably waived his current contention that his written statement constituted a "confession." **See Commonwealth v. Paddy**, 569 Pa. 47, 82, 800 A.2d 294, 316 (2002) (explaining defendant who makes knowing, voluntary, and intelligent decision concerning trial strategy cannot later complain trial counsel was ineffective on basis of that decision; to hold otherwise would allow defendant to build "ready-made" ineffectiveness claim into his case to be raised in event of adverse verdict).

Even if Appellant's statement could qualify as a "confession," we decline to adopt a *per se* ineffectiveness standard for a violation of Rule 646(C), and Pennsylvania law does not support that precedent. First and foremost, **Young** did not and could not overrule **Penrose** *sub silentio*. **See Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa.Super. 2006), *appeal denied*, 596 Pa. 743,

- 25 -

946 A.2d 686 (2008), *cert. denied*, 555 U.S. 881, 129 S.Ct. 197, 172 L.Ed.2d 141 (2008) (stating: "[I]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, …except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court"). In addition, **Young**'s mistaken attempt to distinguish **Penrose** on procedural grounds was unfounded, because the ineffective assistance of counsel test is the same regardless of the procedural posture of the case. Further, **Karaffa** was limited to jury instructions and did not constitute a sufficient "intervening" authority to call **Penrose** into question.[9]

Moreover, to the extent **Young** espouses a *per se* ineffectiveness standard for a violation of Rule 646(C), we expressly overrule it, as our courts have presumed prejudice in only the rarest of circumstances. **See Spotz, supra**. **See also Commonwealth v. Rosado**, 637 Pa. 424, 150 A.3d 425 (2016) (explaining very limited circumstances where court will presume prejudice under Pennsylvania law; *per se* ineffectiveness of counsel occurs with actual or constructive denial of counsel, state interference with assistance

_____

[9] The current rules of criminal procedure now permit the trial court, in its discretion, to send out portions of the jury instructions during deliberations. **See** Pa.R.Crim.P. 646(B) (stating trial judge may permit members of jury to have for use during deliberations written copies of portion of judge's charge on elements of offenses, lesser included offenses, and any defense upon which jury has been instructed). Thus, the current rule has superseded **Karaffa** with respect to jury instructions.

of counsel, counsel's failure to subject prosecution's case to meaningful adversarial testing, or counsel's actual conflict of interest). Under the circumstances of the present case, counsel's trial strategy to allow Appellant's written statement to go out with the jury during deliberations simply does not fall into one of the limited *per se* categories subject to presumed prejudice. *See id.* Consequently, Appellant must establish his right to relief under the traditional three-prong test for ineffectiveness of counsel. *See Strickland, supra*; *Turetsky, supra*.

Here, the PCRA court evaluated Appellant's ineffective assistance of counsel claim as follows:

> Addressing [Appellant's] third issue…it is noted that [Appellant] argues that his trial [c]ounsel was [ineffective] for failing to object to allowing his "written confession" to go out with the [j]ury. A review of the record demonstrates that this argument is meritless. It was [Appellant's] [c]ounsel who wanted the written statement to be considered by the [j]ury because he argued at length that it was [exculpatory]. Moreover, [Appellant's] [c]ounsel and the Assistant District Attorney both conferred with the [c]ourt prior to closing arguments and agreed that portions of the statement had to be redacted (at [Appellant's] insistence). [Appellant's] [c]ounsel had argued to the [j]ury at some length that [Appellant's] statement contradicted the testimony of his co-conspirators, Stephanie Keck and Kerry Frank. [Appellant] had testified to such on [r]edirect [e]xamination.
>
> As such, the course chosen by [Appellant's] [c]ounsel had a reasonable basis designed to effectuate his client's interests.
>
> Since the record itself reveals that [Appellant's] written statement was an integral part of his defense, the reason why his attorney wanted it to go out with the [j]ury is

apparent. As such, his attorney had a very good reason to have the [j]ury review it during its deliberations. The fact that the [j]ury did not find [Appellant's] testimony or his [allegedly exculpatory] statement credible does not impugn the effectiveness of his [t]rial [c]ounsel. No [h]earing is required on this issue as what occurred and the reasons therefore are apparent from the record.

(Opinion in Support of Rule 907 Notice, filed 4/1/16, at 2-3) (internal citations omitted).[10] The record supports the court's analysis. *See Ford, supra*; *Boyd, supra*. Significantly, Appellant does not attack counsel's strategy in denying Appellant's participation in the crimes and classifying Appellant's written statement as exculpatory at trial. The record makes clear and apparent that trial counsel had a reasonable basis for allowing the jury to view Appellant's written statement, consider the disputed word, and decide whether it supported Appellant's trial testimony and the defense theory of the case. *See Chmiel, supra*; *Hanible, supra*. Therefore, Appellant's third ineffectiveness of counsel claim merits no relief. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

President Judge Emeritus Bender, Judge Panella, Judge Shogan, Judge Lazarus, Judge Stabile, Judge Dubow, Judge Nichols, and Judge McLaughlin join this opinion.

---

[10] The PCRA court's decision unequivocally intended to say "exculpatory." Therefore, we substituted the correct word in two places to reflect an accurate statement of record.

Judge McLaughlin files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2018