J-S03041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEON PLATT | : | |
| | : | |
| Appellant | : | No. 1328 WDA 2019 |

Appeal from the PCRA Order Entered August 2, 2019
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0001434-2013

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED FEBRUARY 28, 2020**

Leon Platt (Platt) appeals from the order entered by the Court of Common Pleas of Lawrence County (PCRA court) dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

This Court previously summarized the facts of this case on direct appeal as follows:

> On November 11, 2013, [Platt] and Taylor Foley ("Foley") went to the home of Michael Pounds, with whom Foley and [Platt] had an ongoing dispute. Foley drove the two to Mr. Pounds' home in a white Chevrolet Cruz owned by Foley's mother. [Platt] fired shots toward and into the side of the house. The bullets did not pass through to the interior of the home, but at least some bullets stuck in the house. Police found four .45 caliber shell casings around Pounds' home.

---

[*] Retired Senior Judge assigned to the Superior Court.

On the evening of November 15, 2013, [Platt], Foley, Foley's infant child, LaXavier Crumb ("Crumb"), Heather Hall ("Hall"), and Shane Mihalko ("Mihalko") were at Hall and Crumb's apartment at 411 Loop Street. That night, [Platt], Foley, Crumb, and Richard Hogue (the "Victim") left 411 Loop Street and drove to the West End Café.

The group drove to a road behind the West End Café, and [Platt] and Foley exited the vehicle. Foley shot her 9 mm pistol and [Platt] shot his .45 caliber Kimber pistol near the West End Café, hitting the car of Linda Boots and going through the window of Tim and Allison Phillippi's residence at 1217 Lawrence Ave. Crumb and the Victim stayed in the car.

Following the shooting, [Platt], Crumb, Foley, and the Victim returned to 411 Loop Street. Foley and the Victim left to get cigarettes and, while they were out, checked to see the damage [Platt] and Foley had caused by the shooting at the West End Café.

Upon their return to 411 Loop Street, an argument between the Victim and [Platt] about the scope of the damage caused by [Platt] and Foley ensued.

[Platt] was on one side of the room in a rocking chair, Foley and her baby were on a loveseat adjacent to the chair. The Victim was in the middle of a couch across the room from [Platt] with Crumb to his left and Mihalko to his right, and a coffee table in the middle of the seating arrangement. As the argument got more intense, Mihalko, sensing trouble, left the house. The argument continued and both the Victim and [Platt] stood up across the living room from each other. Foley then covered her baby in a protective position, [Platt] raised his .45 caliber Kimber pistol and shot the Victim once. The Victim later died.

After [Platt] shot the Victim, [Platt], Crumb, and Hall all left 411 Loop Street. Foley stayed at the house with the Victim and called 911. When the police arrived, they spoke with Foley who eventually told them that [Platt] was the shooter and gave them a description of him. [Platt], who was allegedly at Foley's parents' residence, called Foley.

After being called to Elwood City to investigate the shooting, Sgt. Matthew Smock, of nearby Koppel Borough, observed [Platt] heading away from Elwood City. Upon the arrest, [Platt] identified

himself as "Mike." The Koppel Borough officers exchanged custody of [Platt] with the Pennsylvania State Police, who transported him to the Elwood City Police Department.

On November 16, 2013, the Commonwealth charged [Platt] with [Murder of the Third Degree, Recklessly Endangering Another Person ("REAP"), Persons not to Possess or Use Firearms, and Firearms not to Be Carried without a License at Case No. 1434; Discharge of a Firearm into an Occupied Structure at Case No. 1417; and Criminal Mischief and REAP at Case No. 1432.].

On December 17, 2013, the court held a preliminary hearing at which [Platt] entered not guilty pleas to all charges. On June 11, 2014, [Platt] filed an Omnibus Pretrial Motion for Suppression and Writ of *Habeas Corpus*. After hearings on the Motion, the court denied the Motion.

The case proceeded to trial on April 4, 2016. . . .

(**Commonwealth v. Platt**, 2017 WL 1372853, at *1–2 (Pa. Super. filed Apr. 13, 2017)).

Relevant to this appeal, Foley testified at Platt's trial[1] that immediately before the shooting, she observed Platt with a gun in his hand extended towards the Victim. (**See** N.T. Trial, 4/08/16, at 46-48). Platt continued to point the gun at the Victim while the two men argued. (**See id.**). Foley further testified that she did not see who shot the Victim because she was looking at her son and covering his ears when she heard the gun discharge. (**See id.** at 47-48). In that testimony, she later implicated a different man in the

---

[1] Foley explained that she was subject to an immunity order pursuant to which her trial testimony could not be used as evidence against her. (**See** N.T. Trial, 4/08/16, at 5).

shooting, stating: "Leon [Platt] isn't the shooter. You will never guess who it really is. . . . So free Leon. Zay [LaXavier Crumb] deserves to be in jail." (*Id.* at 74).

On April 14, 2016, a jury convicted Platt of the above charges. On August 3, 2016, the trial court sentenced him to an aggregate term of not less than 22 nor more than 52 years' incarceration. This Court affirmed Platt's judgment of sentence on April 13, 2017, and our Supreme Court denied his petition for allowance of appeal on December 19, 2017.

Platt filed the instant-counseled PCRA petition on April 9, 2018, later amended. Platt asserted a right to relief based on Foley's purported recantation of her trial testimony in two recorded phone conversations that she had with him while he was in prison that he maintains is after-discovered exculpatory evidence entitling him to a new trial.[2] Platt also avers that trial counsel was ineffective[3] for failing to present an expert in ballistics to testify concerning the angle of the bullet entry into the Victim. After holding

---

[2] The PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

[3] **See** 42 Pa.C.S. § 9543(a)(2)(ii) (providing eligibility for relief where counsel provides ineffective assistance).

- 4 -

hearings, the PCRA court denied the petition. Platt timely appealed raising the same two issues that as he raised before the PCRA court.[4]

Platt first claims that the PCRA court erred in not giving him a new trial based on Foley's recantation of her trial testimony during two recorded prison telephone calls with him because Foley's new statement would have changed the outcome of the trial. A petitioner seeking relief on an after-discovered evidence claim "must establish the evidence: (1) was discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) is not cumulative; (3) is not being used solely to impeach credibility; and (4) would likely compel a different verdict." *Commonwealth v. Solano*, 129 A.3d 1156, 1180 (Pa. 2015) (citation omitted). Failure to establish one prong obviates the need to analyze the remaining ones. *See id.* We are also mindful of this Court's obligation to defer to the PCRA court's credibility determinations and of the precept that, in general, recantation evidence is notoriously unreliable. *See id.*

As the Commonwealth points out, Foley did not recant her trial testimony. (*See* Commonwealth's Brief, at 10). In fact, at the PCRA hearing,

---

[4] "Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa. Super. 2019) (citation omitted). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Id.* (citation omitted).

Foley refused to testify, instead asserting her Fifth Amendment right against self-incrimination. Platt did submit two conversations between himself and Foley on a recorded prison telephone line. In the recordings, Foley "admitted she frequently lies to police and does not know why anyone would believe her." She also stated, "I'm sorry but I had no choice, they held my son over my head." (Platt's Brief, at 6). Furthermore, "at no point during the conversations did Foley explicitly state what portions of her trial testimony were false nor did she clearly indicate [Platt] was innocent." (Trial Court Opinion, 8/02/19, at 19).[5]

We agree with the PCRA court that Platt did not meet the requirements of the PCRA's after-discovered evidence test. First, at trial, although she gave testimony damaging to Platt, Foley also declared his innocence and implicated another man, LaXavier Crumb, in the shooting. Second, Foley did not recant her trial testimony, either at the PCRA hearing, where she refused to testify, or in the prison phone recordings, where all she did was give reasons why she testified and that she frequently lies to the police.

Based on the above, Platt did not satisfy the after-discovered evidence test. First, he failed to satisfy the third prong of that test because he is impermissibly attempting to use the prison phone calls solely to impeach

---

[5] The audio recordings were not transcribed because they were difficult to understand. Counsel stipulated that this was acceptable. The excerpt from the recordings transcribed by Platt's counsel's staff and reproduced in his brief is consistent with the PCRA court's description. (***See*** Platt's Brief, at 5-8).

Foley's credibility with regard to her trial testimony. Second, he also failed to meet the fourth prong because those portions of the phone calls would not compel a different verdict at trial because Foley, during trial, testified that Platt was innocent; she also never recanted that portion of her testimony that was detrimental to him. Accordingly, Platt's after-discovered evidence claim merits no relief.

As to his ineffective assistance of trial counsel claim for failure to present expert ballistics testimony, Platt argues that counsel should have sought out and presented expert witness testimony to establish that the bullet that struck the Victim could not have originated from where he was positioned in the room. (*See* Platt's Brief at 14, 17, 20). He maintains that this was especially important where, at the time of the incident, there were as many as six people in the room. (*See id.* at 15).

"The law presumes counsel has rendered effective assistance." *Commonwealth v. Postie*, 200 A.3d 1015, 1022 (Pa. Super. 2018) (*en banc*) (citation omitted). "In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id.* (citation omitted). "The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action

or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Id.** (citation omitted). "The petitioner bears the burden of proving all three prongs of the test." **Id.** (citation omitted).

"To establish ineffectiveness for failing to call an expert witness, an appellant must establish that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant." **Commonwealth v. Weiss**, 81 A.3d 767, 804 (Pa. 2013) (citations omitted).

As the PCRA court found, Platt did not substantiate his assertion that trial counsel should have obtained an expert witness to opine with respect to ballistics. (**See** Trial Ct. Op., at 15) (stating "[Platt] has not demonstrated a witness exists or is available to testify . . . It is not sufficient for [Platt] to claim an expert witness would have been beneficial at trial without setting forth the identity and prospective testimony of said expert witness."). Accordingly, Platt's claim fails when he has neglected to even identify the proposed witness or demonstrate availability, let alone establish prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/2020