J-S60038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                               :                 PENNSYLVANIA
                         :
                 v.                   :
                         :
                         :
RONALD DRAYTON               :
                         :
           Appellant       :      No. 191 MDA 2019

Appeal from the PCRA Order Entered January 29, 2019
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004335-2015

BEFORE: SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED JANUARY 02, 2020**

Ronald Drayton (Drayton) appeals from a January 29, 2019 order of the Luzerne County Court of Common Pleas (PCRA Court) dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA).[1] Drayton contends that he involuntarily entered a guilty plea due to his counsel's misadvice that he would not be subject to state incarceration or parole. We find merit in this claim and reverse the order on review so that Drayton may have the opportunity to withdraw his plea.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

**I.**

Drayton was charged with eight criminal counts in state court stemming from a shooting in Wilkes-Barre, Pennsylvania, on July 10, 2015.[2]  At the time of that incident, Drayton was on federal pretrial release.  Drayton absconded to New York after the Wilkes-Barre shooting.  Federal authorities in New York took him into custody on September 14, 2015.  On February 23, 2017, Drayton pled guilty in his federal case and received a prison term of 57 months, followed by three years of supervised release.

At state court proceedings on May 5, 2017, Drayton agreed to plead guilty to one of the eight counts – carrying a firearm without a license.  During the plea colloquy, Drayton confirmed that he and plea counsel had discussed all the conditions of the plea.  He also testified that plea counsel told him he would serve out the maximum range of his state sentence while still being held in federal custody on his federal sentence.  ***See*** Transcript of Sentencing Proceedings, 5/5/2017, at 7.

The Commonwealth responded that it had not agreed to have Drayton serve his prison sentence in purely federal custody.  ***Id***. at 8.  Plea counsel

---

[2] In state court, Drayton was charged with the following offenses:   (Count 1) Persons not to possess, use, manufacture, control, sell or transfer firearms (18 Pa.C.S. § 6105(a)(1)); (Count 2), Firearms not to be carried without a license (18 Pa.C.S. § 6106(a)(1)); and (Counts 3-8) Recklessly endangering another person (18 Pa.C.S. § 2705).

then explained its assumption that the length of the federal sentence (57 months, followed by a three-year period of supervised release) would necessarily exceed the 48-month maximum range of the state sentence. *Id*. The Commonwealth agreed with defense counsel's assessment and the trial court also assumed that "federal prison would be where he would serve." *Id*.[3] The trial court advised that it was "between the federal penitentiary and the state prison" as to where Drayton would be housed until the federal term concluded. *Id*. Drayton did not ask any further questions, assuring the trial court that he understood the parameters of his prospective sentence after conferring with counsel. *Id*. at 9.

The trial court accepted Drayton's plea and imposed a term of 24-48 months, to be served concurrently with the federal sentence. The trial court then addressed for the first time whether any credit for pretrial time served would be awarded as to Drayton's state sentence. Plea counsel argued that since the federal term was concurrent, Drayton must receive credit for all time spent in federal custody – about 20 months.

---

[3] The signed plea agreement provided that the Commonwealth would agree to dismiss the remaining seven counts, and that it would not oppose Drayton's request to have the state sentence run concurrently with his federal term. The agreement acknowledged that the sentencing court was not bound by any promise by the prosecution, and that Drayton had not been guaranteed a specific length of sentence.

The trial court rejected plea counsel's argument, ruling as a matter of law that Drayton could receive no credit on his state sentence for time served on the federal case. *See id*. at 23-24. Yet the trial court also remarked that the issue of credit time on the state sentence would be immaterial because with or without it, Drayton would complete the state sentence while still serving his federal term: "Again, I'm not sure how it matters. I'm giving him . . . 24 months, but he's got to serve 57 months federally anyway. The 24 months, all of this is going to run out; and he's still going to be in jail on his federal sentence." *Id*. at 23. Plea counsel seemed to agree that Drayton's time in federal custody would exceed the state sentence regardless of credit time. *Id*.

Drayton did not timely appeal or file post-sentence motions, but on May 30, 2018, he filed a *pro se* petition for PCRA relief alleging that counsel's ineffectiveness rendered his guilty plea involuntary. PCRA counsel was appointed to represent [Drayton] and a supplemental PCRA petition was filed on December 11, 2018. A PCRA hearing was held on January 29, 2019.

Drayton argued at the hearing that he pled guilty to a state charge because his counsel had guaranteed that if the trial court ran his state sentence concurrently with the federal sentence, he would serve the entirety of the state sentence in a federal facility:

> The way it was explained to me by [plea counsel] . . . was that he had an agreement with the prosecutor to run the state sentence that I received concurrent with my federal sentence . . . [M]y interpretation was that he meant that the state sentence would

be less than what I received in the federal sentence. **And that those two sentences would run concurrent, and that I would receive time for the time that I spent in the county facility, and that I would only serve the time in a federal institution**.

. . . .

**On November 1, 2019, according to the federal authorities, I'll be released. Thereupon, I'll be picked up by the sheriff's office, transported to a county facility to be then transported to a state facility to be processed and then to have to wait to see the parole board and then have to be granted release from the parole board in the state**.

Transcript of PCRA Hearing, 12/29/2019, at 9-10. (Emphases added).

Nothing in the record contradicted Drayton's account of what plea counsel advised him. Drayton's testimony was consistent with a letter his plea counsel sent him on October 5, 2016, in which counsel promised that the prosecutor of his state case had agreed to give him "less time in [his] state case than [his] federal case so that [he] will never serve any time in a state prison nor ever be on state parole."

As of the date of his plea, Drayton had accrued credit time on his federal case from September 14, 2015, to May 5, 2017. He has also accrued 223 days of credit for good behavior. Due to those credits, Drayton's supervised release on his federal sentence is scheduled to begin on November 1, 2019, and had plea counsel's advice been true, he would be out of both state and federal custody on that date. But as a result of plea counsel's miscalculation,

- 5 -

Drayton will go into state custody and possibly parole for up to a year-and-a-half once the federal prison term concludes.[4]

The PCRA court denied Drayton's petition to withdraw his plea and he appealed. Both Drayton and the PCRA court complied with Pa.R.A.P. 1925. Drayton contended in his 1925(b) statement that plea counsel misadvised "that he would not serve any time in state prison." 1925(b) Statement, 3/21/2019, at ¶ 3.

In its Rule 1925(a) opinion, the PCRA court stated that Drayton had acknowledged prior to his plea that he had not been guaranteed his federal term would exceed his state sentence. *See* 1925(a) Opinion, 5/24/2019, at 5. The PCRA court did not address Drayton's related but separate claim that plea counsel had misadvised that if he received a state sentence in the standard range concurrent with the federal term, he would complete the state sentence before the federal term expired.

In his brief, Drayton raises two issues which we combine and rephrase as follows:

> Did counsel's misadvice regarding the consequences of Drayton's plea render the plea involuntary?

Appellant's Brief, at 3.

---

[4] Drayton has already served the minimum range of his state sentence (24 months), and it is possible he will be granted parole in the state system prior to the end of the maximum range of 48 months, which falls on May 5, 2021.

**II.**

**A.**

"The law presumes counsel has rendered effective assistance." ***Commonwealth v. Postie***, 200 A.3d 1015, 1022 (Pa. Super. 2018). To prevail on such a claim, a PCRA petitioner must demonstrate, "by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Id.*** at 1023 (citation omitted).

The petitioner must demonstrate that: "(1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error." ***Commonwealth v. Grove***, 170 A.3d 1127, 1138 (Pa. Super. 2017) (citation omitted). "The petitioner bears the burden of proving all three prongs of the test," and the failure to prove any single prong is fatal to an ineffectiveness claim. ***Postie***, 200 A.2d at 1023 (citation omitted).

"Claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness actually caused an involuntary or unknowing plea." ***Commonwealth v. Brown***, 48 A.3d 1275, 1277-78 (Pa. Super. 2012). Even if counsel misadvised a defendant in some

respect, a defendant must still show prejudice by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Hill v. Lockhart***, 474 U.S. 52, 59 (1985).

To establish the prejudice prong of an ineffectiveness claim in the context of a plea, a defendant bears a light burden:

> "*The 'reasonable probability' test is not a stringent one.*" [***Commonwealth v. Hickman***, 799 A.2d 136, 141 (Pa. Super. 2002)]. The Court in ***Hickman*** derived this standard from ***Nix v. Whiteside***, 475 U.S. 157, 175 (1986), which held that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."

***Commonwealth. v. Rathfon***, 899 A.2d 365, 369–70 (Pa. Super. 2006) (some citations omitted).

"Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine 'whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.'" ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (quoting ***Commonwealth v. Garcia***, 23 A.3d 1059, 1061 (Pa. Super. 2011)).

**B.**

Drayton is entitled to withdraw his plea because his counsel misadvised him as to whether he would be subject to state incarceration and state parole on a standard range state sentence made concurrent to a 57-month federal term. At the plea colloquy, Drayton stated that he was entering a plea based on the promise that he "wouldn't serve any time in a state penitentiary."

Transcript of Sentencing Proceedings, 5/5/2017, at 5. Drayton will nevertheless be subjected to incarceration in a state penitentiary and state parole as a result of his plea.

The Commonwealth argues that Drayton's PCRA claim fails because no sentence was ever guaranteed in exchange for a plea; Drayton received a concurrent term within the statutory guidelines; and several state charges were dismissed pursuant to the plea agreement. To the extent Drayton seeks PCRA relief based merely on the length of his state sentence, the Commonwealth is correct that such a claim has no merit.[5]

However, the meritorious basis of Drayton's ineffectiveness claim concerns not the length of the state sentence imposed, but rather the unfulfilled promise that Drayton would never serve any portion of the state sentence in state custody or on state parole **after** the federal prison term had concluded. Plea counsel, the prosecution and the trial court mistakenly assumed that the 57-month federal term would exceed a standard range state sentence if imposed concurrently. Due to credits awarded as to the federal

---

[5] Drayton apparently concedes this point on appeal, stating in his brief that Pennsylvania law precludes the application of federal credit time to his state sentence. **See** Appellant's Brief, at 10 (arguing that trial counsel was ineffective in this respect because "when time served is credited to one sentence it cannot also be credited to a second sentence") (citing 42 Pa.C.S. § 9760; **see also Commonwealth v. Merigris**, 681 A.2d 194 (Pa. Super. 1996) (holding the time accrued toward a federal sentence cannot be applied to a state sentence).

sentence and a lack of pretrial confinement credit as to the state sentence, the latter term will not conclude until about a year-and-a-half after the federal prison term is over.[6]

The mistaken assumption of plea counsel, the prosecution and the trial court made a plea much more attractive to Drayton because it would have allowed him to avoid state prison and state parole once the federal sentence concluded. This factor weighed heavily in Drayton's decision to plead guilty, yet as matters now stand, Drayton will not receive the benefit of that bargain.

Consequently, Drayton has satisfied all three elements of ineffectiveness. Defense counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate Drayton's interests. **See** **Hickman**, 799 A.2d at 141. This unsound advice prejudiced Drayton because it subjected him to a period of state prison and state parole that he did not

_____

[6] The dissent would find that Drayton was fully informed of his plea terms because (a) the Commonwealth denied that it had agreed to allow Drayton to serve all of his time in a federal prison, and (b) the written colloquy provided that he would not be guaranteed any particular sentence. However, even though Drayton was advised that any legal term could be imposed, the record is clear that the trial court, the Commonwealth, and defense counsel all incorrectly believed that he could not serve time in a state facility because the state term would conclude prior to the end of the federal sentence. As discussed above, a moment after clarifying the terms of the plea agreement, the Commonwealth confirmed defense counsel's understanding that "federal prison would be where he would serve." **See** Transcript of Sentencing Proceedings, 5/5/2017, at 8. It is precisely this understandable confusion – between what the Commonwealth agreed to contractually and what the Commonwealth *said would happen* – that supports Drayton's claim of an involuntary plea.

bargain for or expect. Finally, there is a reasonable probability that Drayton would not have entered his plea had he known of his exposure to state prison and state parole.

Because he has established that his counsel was ineffective and the record does not support the PCRA court's findings, Drayton is entitled to withdraw his plea. *See id.* at 143 (plea involuntary due to counsel's misadvice that defendant was eligible for boot camp program when defendant was in fact ineligible); *see also Barndt*, 74 A.3d at 198 ("[W]e repeatedly have held that erroneous legal advice by counsel regarding the consequences of a plea . . . may constitute a basis for PCRA relief. Appellant alleges that he was given such advice."); *Rathfon*, 899 A.2d at 371 ("[W]e conclude that the record supports the PCRA court's determination that there was a reasonable probability that Rathfon would not have pled guilty had he known that he would not have been able to serve the sentence in a county facility.").

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Judge Shogan files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/02/2020

- 11 -