J-S36039-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN MICHAEL PROCTOR, | : | |
| | : | |
| Appellant | : | No. 105 WDA 2020 |

Appeal from the PCRA Order Entered December 31, 2019
In the Court of Common Pleas of Potter County Criminal Division at
No(s): CP-53-CR-0000249-2014

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:              FILED AUGUST 26, 2020

Jonathan Michael Proctor (Appellant) appeals pro se from the order denying his first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, in the Court of Common Pleas of Potter County (PCRA court).  We affirm.

I.

On September 30, 2015, Appellant was convicted by a jury for his role in the overdose death of Daniel Lowe (Lowe).  The Commonwealth's evidence at trial was that on October 26, 2012, Lowe and his girlfriend, Dakota Woodward (Woodard), went with Appellant to buy heroin from Brian Pierce (Pierce).  The three left together from Galeton Borough, Potter County, and

_____

[*] Retired Senior Judge assigned to the Superior Court.

drove to Pierce's trailer in Westfield Borough, Tioga County. When they arrived, Appellant got out and went in the trailer. Inside a bathroom, Appellant bought five bags of heroin from Pierce. Appellant got back in the car and gave three of the bags to Lowe. Lowe then drove to a nearby dirt road. Using a syringe, Lowe injected Woodard with heroin while Appellant did the same to himself in the backseat. Lowe then injected himself.

Because neither Lowe nor Woodard were able to drive, Appellant drove the car back to Potter County. When they returned, Woodard discovered that Lowe, who was seated in the backseat, was unresponsive. Woodard rushed to get help from a friend, who then called 911. Because he had a bench warrant for his arrest, Appellant fled on foot before the ambulance arrived. Lowe was taken to a nearby hospital and pronounced dead of a drug overdose.

A few days later, on October 31, 2012, Appellant gave a voluntary statement to the police. In his statement, he admitted that Lowe contacted him about getting heroin and that he went with Lowe and Woodard to Pierce's to get the heroin. He denied, however, that he bought the heroin, instead claiming that Pierce walked to the car and gave the heroin to Woodard, who then gave it to Lowe.

At trial, Woodard testified that Appellant gave the heroin to Lowe while Pierce admitted that he sold the heroin to Appellant. Both denied that they were testifying as part of any agreement to receive favorable treatment, with Woodard acknowledging that she had related charges pending. Additionally,

the Commonwealth presented Kaitlyn Piquadio.  She testified that Appellant admitted to her that he gave the heroin to Lowe.  According to her, Appellant also admitted that he was trying to get Pierce to testify that he sold the heroin to Woodard.  Pierce confirmed the attempted fabrication during his direct examination.

The jury convicted Appellant of drug delivery resulting in death, flight to avoid apprehension, delivery of a controlled substance, simple possession, conspiracy to commit simple possession and possession of drug paraphernalia.[1]  The trial court sentenced Appellant to an aggregate term of 12 years and 10 months to 26 years and 10 months of imprisonment.  After the denial of post-sentence motions, Appellant filed a direct appeal to this Court.  We affirmed the judgment of sentence on February 9, 2017, and our Supreme Court denied allowance of appeal on October 10, 2017.  Commonwealth v. Jonathan Michael Proctor, 156 A.3d 261 (Pa. Super. 2017), appeal denied, 172 A.3d 592 (Pa. 2017).

On November 13, 2017, Appellant filed a pro se PCRA petition raising several claims of trial counsel ineffectiveness.[2]  The PCRA court appointed

_____

[1] 18 Pa.C.S. §§ 2506(a), 5126(a), 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 18 Pa.C.S. § 903(a), and 35 P.S. § 780-113(a)(32), respectively.

[2] Appellant filed his petition before the judgment of sentence became final on January 8, 2018, which would have been the expiration of time for seeking certiorari with the United States Supreme Court.  See 42 Pa.C.S. § 9545(b)(3); U.S. Sup. Ct. R. 13.  Because Appellant did not pursue further

counsel and ordered counsel to file either an amended petition or a Turner/Finley no-merit letter.[3] After four extensions, PCRA counsel filed an amended petition on June 22, 2018, raising two claims of ineffective assistance of counsel based on: (1) trial counsel not challenging the admissibility of the forensic toxicologist's determination of death; and (2) direct appellate counsel not properly preserving Appellant's sufficiency and weight claims.

The PCRA court eventually set an evidentiary hearing for December 14, 2018. A few days before the hearing, however, the Commonwealth filed a motion to dismiss the trial counsel ineffectiveness claim, arguing it had been prejudiced by Appellant's delay in filing his petition because trial counsel had passed away in February 2017.[4] Because of the motion, as well as difficulty in being able to consult with Appellant, PCRA counsel requested a continuance of the hearing. The PCRA court granted the request and, after two continuances, rescheduled the hearing for March 15, 2019.

_____

direct review, his pro se PCRA petition related forward to January 8, 2018. Consequently, despite the petition being prematurely filed, there were no jurisdictional impediments to the PCRA court's review.

[3] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988).

[4] Trial counsel passed away while Appellant's direct appeal to this Court was still pending.

Before the hearing could take place, PCRA counsel filed a petition for leave to withdraw on March 12, 2019. In his Turner/Finley no merit letter, counsel limited his discussion to only the issues raised in the amended petition.[5] That same day, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without hearing, stating that it had reviewed the no merit letter and found that both Appellant's pro se petition and amended petition lacked merit. The court's notice, however, mistakenly stated that Appellant had 30 days to appeal its ruling, which prompted Appellant to file a notice of appeal on March 21, 2019.[6] We eventually dismissed the premature appeal on September 17, 2019.

_____

[5] The traditional requirements for properly withdrawing, originally set forth in Finley, were updated by this Court in Commonwealth v. Friend, 896 A.2d 607 (Pa. Super. 2006), to include, among others, "PCRA counsel must, in the 'no-merit' letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims[.]" Id. at 615. In Commonwealth v. Pitts, 981 A.2d 875 (Pa. 2009), our Supreme Court abrogated Friend "[t]o the extent Friend stands for the proposition that an appellate court may sua sponte review the sufficiency of a no-merit letter when the defendant has not raised such issue." Id. at 879. Because Appellant has not challenged the sufficiency of the no merit letter, we need not address whether PCRA counsel complied with Turner/Finley.

[6] The PCRA court also reissued its Rule 907 notice on March 21, 2019, clarifying that it had not yet dismissed Appellant's petition. However, once Appellant filed the appeal, the PCRA court had no jurisdiction to proceed in the matter. See Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter."). Appellant nonetheless filed objections to the Rule 907 notice on May 9, 2019, and the Commonwealth filed a motion to dismiss the PCRA petition on August 1, 2019. The PCRA court never ruled on these pleadings.

Once the case was returned, the PCRA court reissued its Rule 907 notice on November 21, 2019.[7] In his response, Appellant argued that PCRA counsel failed to raise additional claims of trial counsel ineffectiveness that were not included in his initial pro se petition. Among these claims, Appellant alleged that PCRA counsel was ineffective for not raising trial counsel's failure to: (1) request a corrupt and polluted source jury instruction for either Woodard or Pierce; (2) raise a Brady violation based on the Commonwealth's failure to disclose Pierce's pending charges; and (3) request a bill of particulars. On December 31, 2019, the PCRA court dismissed the petition without hearing and granted PCRA counsel's request to withdraw from representation. Appellant timely appealed and now raises the three layered claims of ineffective assistance of counsel for our review.[8]

_____

[7] The PCRA court's Rule 907 notice did not state the reasons supporting its intention to dismiss the claims without hearing. See Pa.R.Crim.P. 907(1). Appellant, however, did not raise this in his response, nor does he argue on appeal that he was by prejudiced by the notice. Accordingly, we need not address this deficiency any further. See Commonwealth v. Zeigler, 148 A.3d 849, 851 n.2 (Pa. Super. 2016) (finding any defect in Rule 907 notice was waived by appellant for failing to raise issue of PCRA court's noncompliance with Rule 907 on appeal).

[8] "Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error." Commonwealth v. Postie, 200 A.3d 1015, 1022 (Pa. Super. 2018) (en banc) (citation omitted). Additionally, "[a] petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and

II.

We briefly review our standard of review of layered claims of ineffective assistance of counsel.

> The law presumes counsel has rendered effective assistance. The burden of demonstrating ineffectiveness rests on [a petitioner]. To satisfy this burden, [a petitioner] must plead and prove by a preponderance of the evidence that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the [petitioner's] ineffective assistance of counsel claim.

Commonwealth v. McGarry, 172 A.3d 60, 70 (Pa. Super. 2017) (internal citations and quotations omitted).

> Where the defendant asserts a layered ineffectiveness claim[,] he must properly argue each prong of the three-prong ineffectiveness test for each separate attorney.
>
> Layered claims of ineffectiveness are not wholly distinct from the underlying claims[,] because proof of the underlying claim is an essential element of the derivative ineffectiveness claim[.] In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

_____

no purpose would be served by any further proceedings." Id. (citation omitted).

Commonwealth v. Rykard, 55 A.3d 1177, 1190 (Pa. Super. 2012) (citations omitted).[9]

### A.

In his first claim, Appellant alleges that PCRA counsel was ineffective for not raising trial counsel's failure to request a corrupt and polluted source jury instruction.[10] He argues that this instruction was warranted because both Woodard and Pierce could have been charged for their roles in Lowe's death.

_____

[9] Appellant preserved his claims by raising them in his response to the PCRA court's November 21, 2019 Rule 907 Notice. See Rykard, 55 A.3d at 1189 (holding that PCRA petitioner must raise allegations of ineffective assistance of PCRA counsel in the Rule 907 response); Commonwealth v. Rigg, 84 A.3d 1080, 1085 (Pa. Super. 2014) (a petitioner can preserve the issue of PCRA counsel's ineffectiveness by including that claim in his Rule 907 response or raising the issue while the PCRA court retains jurisdiction).

[10] The Suggested Standard Jury Instruction is:

> First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source.
>
> Second, you should examine the testimony of an accomplice closely and accept it only with care and caution.
>
> Third, you should consider whether the testimony of an accomplice is supported, in whole or in part, by other evidence. Accomplice testimony is more dependable if supported by independent evidence. [However, even if there is no independent supporting evidence, you may still find the defendant guilty solely on the basis of an accomplice's testimony if, after using the special rules I just told you about, you are satisfied beyond a reasonable doubt that the accomplice testified truthfully and the defendant is guilty.]

Pa. SSJI (Crim) 4.01.

Specifically, Pierce was the original source of the deadly heroin, while Woodard accompanied Lowe and Appellant to get the heroin. Appellant's Brief at 8. Because both witnesses were central to the Commonwealth's case, Appellant believes that there was no reasonable basis for trial counsel not to request the instruction, and that the outcome of his trial would have likely been different if the jury had received the instruction. Id. at 9-10.

With respect to the corrupt and polluted source instruction, this Court has explained:

> It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so. The justification for the instruction is that an accomplice witness will inculpate others out of a reasonable expectation of leniency. An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference. Thus, if the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony. Where, however, there is no evidence that would permit the jury to infer that a Commonwealth witness was an accomplice, the court may conclude as a matter of law that he was not an accomplice and may refuse to give the charge. This is so because a trial court is not obliged to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial.

Commonwealth v. Hall, 867 A.2d 619, 630 (Pa. Super. 2005) (quotations and citation omitted).

We have defined "an 'accomplice' [a]s an individual who knowingly and voluntarily cooperates with or aids another in the commission of a crime. Thus, and in following with the prior statement, a showing of mere presence at the scene of a crime is insufficient to support a conviction: evidence indicating participation in the crime is required." Id. (quotation and citations omitted); see also 18 Pa.C.S. § 306(c)(1) ("A person is an accomplice of another person in the commission of an offense if ... with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it[.]").

As to the first prong, though there is no dispute that the instruction was not requested, Appellant must still show that he would have been entitled to the instruction if timely requested at trial. The statute for drug delivery resulting in death defines the offense as follows:

> A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S. § 2506(a) (footnote omitted).

According to his own testimony, Pierce sold the heroin that was eventually ingested by Lowe and caused his death. While his potential criminal liability would not change whether it was Appellant or Woodard who then gave

it to Lowe, there was sufficient evidence to present an inference that he was an accomplice to drug delivery resulting in death.

Additionally, Woodard was at the very least an accomplice to the purchase of the heroin in violation of 35 P.S. § 780-113(a)(16), which prohibits "Knowingly or intentionally possessing a controlled or counterfeit substance[.]" At trial, she testified that she knew the purpose of the trip was to buy heroin and that Lowe drove her car to buy the heroin from Pierce. Based on this testimony, she participated and aided in the purchase of the heroin that ultimately resulted in Lowe's death; she was not merely present. Accordingly, there was enough evidence for Appellant to establish the first prong of his claim as to both witnesses.

However, even if there was no reasonable basis for trial counsel not to request the instruction, Appellant was not prejudiced as it is not reasonably probable that the outcome of the trial would have been different if the jury had received the instruction.

In rejecting Appellant's claim, the PCRA court explained:

[A]lthough the standard accomplice testimony instruction was not provided to the jury the Court did instruct the jury in making assessment of credibility to determine whether the witnesses were biased or had an interest in the outcome as follows:

You alone are the sole judges of credibility. I will mention some of the factors which may bear on that determination. Whether the witness has an interest in the outcome of the case or has a friendship or animosity toward other persons concerned in the case, the behavior of the witnesses on the witness stand, his or her demeanor, his or her manner of testifying, whether he or she shows any bias or prejudice

- 11 -

> which might color his or her testimony. [N.T., 9/30/15, at 634-35].
>
> You should consider whether the witnesses appear to be biased or unbiased, whether they were interested, or disinterested persons and you should consider the other factors which go into their reliability. [Id. at 638].

Finally, even if the accomplice testimony instruction had been given, the evidence was overwhelming from three witnesses Pierce, Woodard and Piquadio that [Appellant] alone provided the lethal dose of heroin to Lowe. Accordingly, the instruction would not have changed the outcome of the proceedings, especially due to the testimony of the [Appellant's] friend Piquadio.

PCRA Court Opinion, 2/18/20, at 4.

At trial, Woodard acknowledged that she had related charges pending and was asked whether any promises had been made to her for testifying. N.T., 9/28/15 at 33, 126. Likewise, Pierce was asked if his testimony was influenced by his potential criminal liability for his role in Lowe's death. Id. at 143. Trial counsel followed up with Woodard on her charges, asking her if she had been promised anything for her testimony. Id. at 105-06. Then, during his closing statement, trial counsel argued that Woodward was lying in part to avoid criminal liability. N.T., 9/30/15, at 589 ("If the facts fall the other way, she could be on the hook for this exact event."), 597 ("[Woodard] knew if she didn't come up with a better story she was on the line for this."). The jury was, therefore, apprised that Woodard's and Pierce's testimony was potentially influenced by their roles in Lowe's death and their potential criminal liability.

With the jury aware of their interests in testifying for the Commonwealth, the trial court gave general instructions about how to assess the witnesses' testimony, including, as noted in the PCRA court's opinion, to consider whether they had any interest in the outcome of the case. Under similar circumstances, our Supreme Court has found that a PCRA petitioner is not prejudiced by trial counsel's failure to seek and obtain a corrupt and polluted source jury instruction. See Commonwealth v. Wholaver, 177 A.3d 136, 166 (Pa. 2018) (finding no prejudice for failing to request accomplice instruction where jury was apprised of witnesses' plea agreements and trial court provided general instructions for assessing witnesses' credibility); see also Commonwealth v. Smith, 17 A.3d 873, 904-07 (Pa. 2011) (finding the same).

Moreover, the PCRA court found that the Commonwealth presented overwhelming evidence that Appellant gave the heroin to Lowe. Besides Woodard's direct eyewitness testimony, the Commonwealth presented evidence that Appellant not only admitted to a friend that he gave the heroin to Lowe, but also that he was attempting to get Pierce to testify that he initially gave the heroin to Woodard. N.T., 9/28/15, at 180-81 (testimony of Kaitlyn Piquadio). Pierce corroborated the attempted fabrication at trial, testifying that Appellant asked him to give a different version of what happened. Id. at 142. Additionally, whether Pierce gave the heroin to Appellant or Woodard would not change his potential accomplice liability, thus weakening Appellant's

claim that Pierce was lying in order to avoid criminal liability. Accordingly, in light of all this evidence, together with the trial court's general instructions on witness credibility, the PCRA court did not err in finding Appellant's claim as not warranting relief.

### III.

Appellant next claims that PCRA counsel was ineffective for failing to raise a claim based on Brady v. Maryland, 373 U.S. 83 (1963), because the Commonwealth did not give the defense information about Pierce's unrelated pending criminal case in Potter County. Appellant's Brief at 11.

We set forth the following with respect to a Brady claim:

> Under Brady[ ] and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a Brady violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

Commonwealth v. Spotz, 47 A.3d 63, 84 (Pa. 2012).

Appellant is not claiming that Pierce had an agreement with the Commonwealth to receive favorable treatment in his pending criminal case in exchange for testifying at Appellant's trial. Instead, he merely alleges that Pierce had pending criminal charges in Potter County at the time of the trial, and that the Commonwealth had a duty to disclose the charges to Appellant as potential impeachment evidence. Even if there were no agreements,

Appellant argues, the Commonwealth committed a Brady violation by not disclosing the charges.  Appellant's Brief at 12.

However, Pierce's pending criminal charges would have been public information that was equally accessible to Appellant and his trial counsel at the time of trial.  Appellant is not alleging that the Commonwealth took any actions to hinder or block him from learning of the charges, nor has he alleged that Pierce had any kind of agreement with the Commonwealth that it failed to disclose in discovery.  This being the case, the Commonwealth cannot be deemed to have withheld any evidence in violation of Brady.  See Commonwealth v. Ligons, 971 A.2d 1125, 1146 (Pa. 2009) (citing Commonwealth v. Brown, 872 A.2d 1139, 1148 (Pa. 2005) (holding that the Commonwealth has no obligation to provide a defendant with the criminal history of the victim where that record is equally accessible to the defense)); Commonwealth v. Spotz, 896 A.2d 1191, 1248 (Pa. 2006) ("It is well established that no Brady violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence.") (internal citation omitted).

The PCRA court correctly concluded that Appellant's ineffective assistance of counsel claim based on an alleged Brady violation lacked arguable merit.

IV.

In his last claim, Appellant argues that PCRA counsel should have raised trial counsel's failure to request a bill of particulars. The PCRA court addressed this claim in its Rule 1925(a) opinion:

> [Appellant] argues that the failure of trial counsel to request a Bill of Particulars allowed the Commonwealth to present multiple theories as to how the victim died. The Court finds no merit to [Appellant's] claim. The Affidavit of Probable Cause recites that the arresting officer, Chief Brackman, spoke with forensic pathologist, Dr. Michael Coyer who confirmed that the victim died as a result of heroin overdose. The Commonwealth's Information specifically states that [Appellant] was charged with distributing heroin which resulted in the death of Lowe. At trial the Court heard no other theory espoused by the Commonwealth or its witnesses other than [Appellant] provided heroin to Lowe who died as a result of the injection of same. Accordingly, the Court determines that the failure to request a Bill of Particulars by trial counsel would not have affected the outcome of the trial.

PCRA Court Opinion, 2/18/20, at 5.

We find no error in this analysis. Moreover, in his two-paragraph argument, Appellant does not explain how a bill of particulars would have helped his case, alleging merely that his counsel was unable to prepare his defense. On the contrary, trial counsel made the cause of Lowe's death a centerpiece of Appellant's defense, even obtaining his own expert to testify that he could not conclude that Lowe's death was caused by the ingestion of heroin because of the presence of other substances in Lowe's system. Accordingly, Appellant's final claim of ineffectiveness based on the failure to request a bill of particulars lacks merit, and the PCRA court did not err in denying it.

- 16 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/26/2020