J-S24015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES LAWRENCE | : | |
| | : | |
| Appellant | : | No. 1335 WDA 2024 |

Appeal from the PCRA Order Entered October 22, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0012037-2013

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: September 19, 2025**

Appellant James Lawrence appeals from the order dismissing his first Post Conviction Relief Act[1] (PCRA) petition after an evidentiary hearing. Appellant claims that the PCRA court erred by failing to allow him to amend his PCRA petition before dismissal, dismissing his ***Brady***[2] claim and claims of trial counsel's ineffective assistance, and by failing to hold an evidentiary hearing after this Court's previous remand.  After careful review, we affirm.

A previous panel of this court set forth the facts of the case as follows:

On March 29, 2013, Steven Lee and Latia Lee joined family members to celebrate Lateesha Lee Jones's birthday.  As part of the celebration, the family rented a "party bus" limo to transport family and friends to different bars in Pittsburgh.  The party bus initially parked in front of Craig's Bar on Chartiers Avenue in the

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] ***Brady v. Maryland***, 373 U.S. 83 (1963).

West End neighborhood of the City of Pittsburgh at 11:00 P.M. to allow family and friends to board.

One of the family members, Matthew Sherrell, invited Summer Kerley and her friends, Clarissa Clark and Samantha Powe, to join the party. Kerley, Clark and Powe arrived at Craig's Bar and boarded the party bus, but left shortly thereafter because the bus was not leaving at that time. Powe drove Kerley and Clark to Homewood, where they met [Appellant], Michael Lyons, and Jerrick Lane-Bryant at the Lang Bar. Kerley and [Appellant] were dating at the time, and [Appellant] was using Kerley's vehicle.

At 12:30 A.M., the party bus left Craig's Bar and traveled to the Caravan Club in Pittsburgh's South Side. Sherrell called Kerley to inform her of the new location of the party bus, and to invite the three women back onto the bus. Powe then drove Kerley and Clark to the South Side and the three women rejoined the group on the party bus around 2:00 A.M. [Appellant], Lane-Bryant, and Lyons remained at the Lang Bar.

Sometime after 2:00 A.M., once everyone had re-boarded the party bus, the driver began to drive back to the West End and Craig's Bar. During the drive back to Craig's Bar, an argument broke out between the female members of the Lee family and Clark, Powe, and Kerley. The argument progressed into a physical fight between the females. Steven Lee unsuccessfully attempted to remove his sister Latia Lee from the fight.

During the altercation, Powe called [Appellant] and urged [him] to "come get these n***as." In response, [Appellant] had Lane-Bryant drive [Appellant] and Lyons to the West End, using Kerley's vehicle. Clark moved to the front of the bus and spoke with the bus driver about where he was driving, and was also on the phone to [Appellant] while he was en route to the West End. In the aftermath of the phone call to [Appellant], Clark announced to the occupants of the bus, "it's not over, my bro's are on the way coming to spank him and her," referring to Steven Lee and Latia Lee. [Appellant] and his cohorts arrived as the bus was arriving in the vicinity of Craig's Bar. The bus driver stopped the party bus, and parked it fifty feet from Craig's Bar. Lane-Bryant parked in front of the bus.

Sensing trouble, the bus driver ran off the bus and fled the immediate area. Clark also left the bus and ran to Kerley's vehicle, and yelled at [Appellant], Lyons, and Lane-Bryant, "Bros, what

took you so long? Brother, brother, get out of the car. These n***as and b***hes jumped us."

[Appellant], Lyons, and Lane-Bryant exited the vehicle. [Appellant] told Lane-Bryant to grab a thirty round 40 caliber clip, and both Lyons and [Appellant] exited the vehicle with their respective 40 caliber firearms. [Appellant] and Lyons ran onto the bus with their firearms. [Appellant] remained at the front of the bus, Lyons ran to the back of the bus. [Appellant] yelled, "I want my b***h and my sister off this bus." Lyons asked Powe, "Where them n***as?" Powe pointed to Steven Lee and Latia Lee, near the front of the bus, and said, "them right there." Clark added that she wanted Latia and Steven "spanked."

[Appellant] and Lyons then forced Steven Lee and Latia Lee off the bus at gunpoint. Latia clung to her brother as they were dragged off the bus. When they reached the steps, Kerley and Lane-Bryant helped force them off the bus. Once they reached the sidewalk, [Appellant] and Lyons grabbed Steven Lee, separating him from Latia, and dragged him around the front of the bus. Latia Lee tried to chase after her brother, but Kerley and Lane-Bryant stopped her. Kerley hit Latia repeatedly, and Lane-Bryant struck Latia repeatedly with the thirty round clip.

[Appellant] and Lyons moved Steven Lee to the driver's side (street side) of the bus, and started to beat him. Steven Lee broke free and tried to run away towards the back of the bus. [Appellant] raised his firearm and shot Steven Lee several times. Steven Lee suffered four gunshot wounds. The first gunshot entered his left chest, striking a rib and the left ventricle of his heart, causing massive hemorrhaging and heart failure. The second gunshot entered his upper back and exited his neck, severing his spinal cord and perforating his left lung. The third gunshot struck his left hand, and the fourth gunshot grazed his right knee.

Sherrell, having run off the bus into a nearby parking lot to retrieve a firearm when [Appellant] arrived, walked back towards the bus with a 9mm firearm. At the same time, [Appellant] ran around the back of the bus towards Kerley, who was still beating Latia Lee with Lane-Bryant. [Appellant] tapped Kerley on the shoulder and told her it was time to leave. Kerley, [Appellant], and Lane-Bryant started to make their way back to Kerley's vehicle on the passenger's side of the bus as Sherrell fired at them. Latia ran back onto the bus for cover. Lyons ran with

- 3 -

Kerley, [Appellant], and Lane-Bryant, and shot back at Sherrell as he approached the vehicle.

[Appellant] and Kerley jumped into the front passenger seat of the vehicle, and [Appellant] leaned over Kerley to protect her. Lane-Bryant jumped into the driver's seat and ducked for cover. Sherrell continued to shoot at them, striking the vehicle and shooting out all four tires and the windows. Lyons jumped into the back seat and continued to shoot at Sherrell until his firearm was empty. [Appellant] gave Lyons his firearm so that Lyons could continue to shoot back at Sherrell. Lyons replaced the clip in [Appellant's] gun with the thirty round clip that Lane-Bryant had been holding. When Lyons exchanged clips, he dropped [Appellant's] clip onto the street. [Appellant] told Lane-Bryant to retrieve the dropped clip, but Lane-Bryant did not retrieve the clip because Sherrell and Lyons were still exchanging gunfire.

Lane-Bryant placed the keys in the ignition and attempted to drive away, but the vehicle did not move because all four tires were flattened from gunshots. Sherrell was still shooting at the vehicle, and Lyons exited the vehicle and fled to Kerley's nearby residence, at 1111 Sutherland Street. Lane-Bryant continued to attempt to drive the vehicle, and was able to gain enough momentum to make it to Kerley's home.

The shooting stopped after Lane-Bryant drove away. On the bus, Latia told Lateesha that they took Steven off of her and got him. Lateesha and Latia ran off the bus together to find Steven. They found Steven lying in the middle of the street at the back of the bus. Lateesha gave Steven CPR and held his bleeding wounds until the ambulance arrived, but he was generally unresponsive. Steven Lee was emergently transported to the hospital, where life-saving surgeries were attempted, but they were to no avail. Steven Lee was pronounced dead at the hospital.

At Kerley's residence, Lane-Bryant, Kerley, and [Appellant] met Powe, Clark and Lyons. Once inside the house, [Appellant] asked Lane-Bryant whether he picked up [Appellant's] clip as instructed. Lane-Bryant responded that he did not. [Appellant] told Lane-Bryant to get the clip, but Powe responded that Lane-Bryant could not go back outside since the man from the bus was dead, and the police were there. [Appellant] attacked Lane-Bryant and punched him until Kerley, Powe, and Clark were able to pull him off. Fearful of [Appellant], Lane-Bryant went back toward the scene to retrieve the clip, but by that time police had arrived on

- 4 -

the scene, and Lane-Bryant returned to Kerley's without retrieving the clip.

At the same time, Kerley took [Appellant] upstairs to calm him down. [Appellant] told Kerley that he pointed his gun at Steven Lee and told him "to go ahead and he wouldn't go ahead, so he shot." Kerley asked [Appellant] why he shot Steven Lee, and [Appellant] responded that it looked like Steven Lee was grabbing something and was going to run away, so [Appellant] shot him.

The group at Kerley's home collected the two firearms, placed them in a bag, and Lyons walked them to Clark's nearby home to be disposed of. Powe, Clark, and Kerley left at 11:00 A.M. to retrieve Powe's vehicle from the South Side, where it had been parked earlier that morning. [Appellant] also left, leaving behind Lane-Bryant.

Officers at the scene of the killing recovered window glass from a vehicle and a part of a vehicle door, which belonged to Kerley's vehicle. Officers canvassed the area and eventually discovered Kerley's heavily damaged vehicle behind her residence at 1111 Sutherland Street. SWAT entered the residence later that morning and took Lane-Bryant into custody, whereupon he was interviewed and he provided a statement [of] the events surrounding the shooting of Lee.

The ensuing investigation led officers to confirm [Appellant] as the shooter in the death of Steven Lee and a warrant was issued for his arrest. [Appellant] became aware of the warrant and thereupon had Kerley drive him to Atlanta, Georgia. The US Marshals Fugitive Task Force finally arrested [Appellant] on August 21, 2013.

*Commonwealth v. Lawrence*, 1878 WDA 2015, 2016 WL 5210840, at *1-3 (Pa. Super. filed Sept. 20, 2016) (unpublished mem.) (citing Trial Ct. Op., 2/8/16, at 4-11) (some formatting altered).

- 5 -

Appellant was convicted of third-degree murder and carrying a firearm without a license after a jury trial held on March 23, 2015.[3,4]  PCRA Ct. Op., 12/13/24, at 2.  Appellant filed a direct appeal challenging the weight of the evidence, and this Court affirmed the judgment of sentence.  **See Lawrence**, 2016 WL 5210840, at *5.

Appellant filed a timely PCRA petition, which was dismissed on July 20, 2022.  On appeal, this Court vacated the order dismissing Appellant's PCRA petition and remanded for the PCRA court to consider claims of PCRA counsel's ineffective assistance that Appellant raised in this Court pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021).  **See Commonwealth v. Lawrence**, 309 A.3d 152 (Pa. Super. 2024).

The PCRA court summarized the post-remand procedural history as follows:

> Appellant filed an amended PCRA [petition] on June 7, 2024, and the Commonwealth responded on July 5, 2024.  This court found no issues of arguable merit and issued a [Pa.R.Crim.P. 907] notice of intent to dismiss order on July 10, 2024.  Appellant filed a response on September 30, 2024, to which the Commonwealth filed an answer on October 17, 2024.  This court dismissed the petition [on] October 2[2], 2024.

PCRA Ct. Op. at 2-3 (some formatting altered).

_____

[3] 18 Pa.C.S. §§ 2502(c) & 6106, respectively.

[4] Appellant was initially tried in January 2015.  However, that trial ended in a mistrial after a hung jury.  **See** N.T. First Trial, 1/8-20/15, at 819.

Appellant filed a timely notice of appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:[5]

1. Did the PCRA court err in dismissing [Appellant's] PCRA petition prior to granting [Appellant's] request for leave to amend his PCRA petition as outlined within [Appellant's] response to the court's notice of intent to dismiss?

2. Did the PCRA court err in concluding that [Appellant] was not entitled to relief on his claim that the Commonwealth violated Due Process of law when it obfuscated that four of its trial witnesses were incentivized to testify by undisclosed consideration or alternatively, trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by failing to clarify the nature of consideration that each witness received?

3. Did the PCRA court err in concluding that [Appellant] was not entitled to relief on his claim that trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by failing to properly impeach witness Lateesha Jones on cross-examination regarding her *crimen falsi* conviction?

4. Did the PCRA court err in concluding that [Appellant] was not entitled to relief on his claim that trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by failing to properly and fully investigate and litigate [Appellant's] alibi?

5. Did the PCRA court err in concluding that [Appellant] was not entitled to relief on his claim that trial counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by failing to request a specific witness identification instruction that addressed all

_____

[5] Appellant's claims have been reordered for ease of analysis.

- 7 -

material and relevant factors related to Ms. Jones'[s] identification of [Appellant]?

6. Did the PCRA court err in dismissing [Appellant's] PCRA petition without an evidentiary hearing, despite this Court's remand to consider new claims of ineffective assistance of counsel raised pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), and where the PCRA court [had] been satisfied that an evidentiary hearing on said claims was appropriate?

Appellant's Brief at 2-4 (some formatting altered).

In reviewing an order denying a PCRA petition, our standard of review is well settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Staton**, 184 A.3d 949, 954 (Pa. 2018) (citation and quotation marks omitted). A PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." **Commonwealth v. Wholaver**, 177 A.3d 136, 144-45 (Pa. 2018) (citations omitted).

## PCRA Amendment

Appellant's first claim is that the PCRA court erred by dismissing his petition without granting leave to amend, which Appellant sought in his response to the PCRA court's Rule 907 notice. Appellant's Brief at 59. Appellant explains that he sought leave to amend his PCRA petition "to cure

material defects in claim one of [his] PCRA petition, and to add an additional claim of ineffective assistance of trial counsel." *Id.* Specifically, Appellant sought to add an expert report to his PCRA petition to support his claim that trial counsel was ineffective for failing to call an expert to examine the photo that allegedly supported his alibi. *Id.* at 61-62. Further, Appellant sought to add an additional claim of trial counsel ineffectiveness for failing to call an expert witness in the area of eyewitness identification. *Id.* at 63.

Generally, claims raised in unauthorized PCRA supplements and amendments are subject to waiver. *See Commonwealth v. Reid*, 99 A.3d 427, 437 (Pa. 2014). However, a PCRA court can implicitly permit an amendment or supplement where it does not strike the filing and considers the claims raised in the amendment or supplement prior to disposing of the PCRA petition. *See Commonwealth v. Brown*, 141 A.3d 491, 503 (Pa. Super. 2016); *see also Commonwealth v. Boyd*, 835 A.2d 812, 815-16 (Pa. Super. 2003). "PCRA courts are invested with great discretion to permit the amendment of a [PCRA] petition." *Commonwealth v. Mojica*, 242 A.3d 949, 954 (Pa. Super. 2020) (citations omitted).

The PCRA court addressed this claim as follows:

[T]he record reflects that on June 7, 2024, Appellant filed an amended PCRA petition. The Commonwealth responded on July 5, 2024. This court issued a notice of intention to dismiss on July 10, 2024. Appellant filed a response on October 10, 2024. In his response, Appellant raised a new issue, eyewitness identification, and added additional argument to previous claims. This court considered the response to have amended the PCRA petition and ordered the Commonwealth to file an answer. The Commonwealth complied on October 17, 2024. The

- 9 -

> Commonwealth's answer addressed the issues contained in [Appellant's] response to the extent that this court did not need further argument or testimony to determine that the issues raised did not have arguable merit. Since this court had given notice of intent to dismiss, and **fully considered all of the arguments of Appellant, including those contained in his response**, this court did not err in dismissing the PCRA petition.

PCRA Ct. Op. at 7 (emphasis added and some formatting altered).

Based on our review of the record, we discern no error of law or abuse of discretion by the PCRA court. *See Staton*, 184 A.3d at 954. Since the PCRA court did not strike Appellant's amendment and considered it before disposing of his PCRA petition, the PCRA court implicitly permitted Appellant's amendment. *See Brown*, 141 A.3d at 503; *Boyd*, 835 A.2d at 815-16. Accordingly, the PCRA court did not err in failing to grant Appellant leave to amend his PCRA petition. *See Mojica*, 242 A.3d at 954. Therefore, Appellant is not entitled to relief on this claim.

### *Brady* **Claim**

Appellant's next claim is that the Commonwealth committed a *Brady* violation by "intentionally hid[ing] and obfuscat[ing] the nature of the consideration" that each of his co-conspirators received in exchange for their testimony. Appellant's Brief at 47-48. Appellant contends that the structure of the plea agreements "allows the witnesses to testify against [him], without having to admit to any final agreements regarding their side of the plea bargain." *Id.* at 50. Appellant concedes that the Commonwealth disclosed the agreements but not the "full nature of the plea agreements." *Id.* at 47, 50-51. Appellant claims that he was prejudiced by this failure to disclose

- 10 -

because the impeachment evidence of the deals would have been material to

the credibility of his co-conspirators' testimony.[6] *Id.* at 51.

As this Court has previously explained:

> To succeed on a *Brady* claim, a defendant must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. The defendant carries the burden to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. Additionally, the evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

---

[6] Appellant also claims that he was prejudiced by the Commonwealth's failure to correct false testimony of these witnesses. Appellant's Brief at 51. However, Appellant failed to include this claim in his Rule 1925(b) statement. **See** Rule 1925(b) Statement, 11/26/24, at 3-4. Additionally, the PCRA court did not address this issue in its Rule 1925(a) opinion. **See** PCRA Ct. Op. at 7. Accordingly, the claim is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not raised in a Rule 1925(b) statement or in accordance with that Rule are waived); *see also Commonwealth v. Jackson*, 215 A.3d 972, 978 (Pa. Super. 2019) (explaining that a Rule 1925(b) statement must properly specify the error to be addressed on appeal, and a Rule 1925(b) statement that is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no statement and may result in waiver).

Even if the claim was properly included in Appellant's Rule 1925(b) statement, since we conclude that Appellant has failed to show that the Commonwealth suppressed the agreements with these witnesses and because trial counsel did not object to any of the alleged false testimony, this claim is waived. *See Commonwealth v. Pruitt*, 162 A.3d 394, 403-04 (Pa. 2017) (addressing a claim alleging the Commonwealth failed to correct false testimony and holding that, where counsel knows the underlying information but fails to object to the testimony, the claim is waived for PCRA review).

* * *

> *Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses, nor does *Brady* require the prosecution to disclose every fruitless lead considered during a criminal investigation. The duty to disclose is limited to information in the possession of the government bringing the prosecution, and the duty does extend to exculpatory evidence in the files of police agencies of the government bringing the prosecution. *Brady* is not violated when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question, or when the evidence was available to the defense from other sources.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1061-62 (Pa. Super. 2019) (citations and quotation marks omitted).

Here, the PCRA court concludes that "[t]rial counsel cross-examined each witness regarding the details of any plea agreement" they had with the Commonwealth. PCRA Ct. Op. at 7. We agree that the record confirms that trial counsel cross-examined each witness regarding their plea agreement. *See Staton*, 184 A.3d at 954. Accordingly, Appellant fails to establish that the Commonwealth suppressed the deals it made with these witnesses. *See Sandusky*, 203 A.3d at 1061-62.

Initially, we note that Appellant appears to concede that the Commonwealth turned over the written plea agreements in his PCRA petition, which stated "[t]rial and appellate counsel were both aware and/or should have been aware of the . . . plea letters."[7] PCRA Pet., 8/19/19, at 24.

_____

[7] In his brief, Appellant fails to state when he became aware of the plea agreements. *See* Appellant's Brief at 38-53. To the extent that Appellant is

*(Footnote Continued Next Page)*

- 12 -

Nonetheless, the testimony at the evidentiary hearing and Appellant's first trial clearly establishes that trial counsel was aware of the witnesses' deals with the Commonwealth.[8]

At the evidentiary hearing, Deputy District Attorney Kevin Chernosky testified that he was the person responsible for the prosecution of witnesses Kerley and Clark. *See* N.T. Evidentiary Hr'g, 2/14/22, at 38-39. He testified that he extended offers to both women that would reduce the charges against them in exchange for their testimony at Appellant's trial. *See id.* at 47-50, 58-60. Attorney Chernosky stated that he drafted the plea agreement letters to both women's attorneys before Appellant's trial. *See id.* at 40-42, 46-47. Attorney Chernosky stated that the women only needed to testify at Appellant's trial in order to get the benefit of the deal. *See id.* at 58-60.

Appellant's trial attorney, who represented him at both of his trials, testified at the evidentiary hearing that he had no independent recollection of the trials and that he would defer to what was reflected in the record. *See id.* at 29-30, 35. Further, he stated that he did not specifically recall the

conceding that trial counsel was aware of the alleged *Brady* material, we note that, if the *Brady* material was disclosed to counsel and Appellant did not raise the issue on direct appeal, this claim is waived. *See Commonwealth v. Roney*, 79 A.3d 595, 609 (Pa. 2013) (stating "all of the *Brady* violations [the] appellant alleges in this issue could have been raised at trial and/or on direct appeal. . . . Accordingly, this issue is waived" (some formatting altered).

[8] Appellant had the same trial counsel for his first and second trials. *See* Appellant's Brief at 4-5.

- 13 -

written plea agreements between Kerley and Clark but that he was "certain" that he would have been aware of them at Appellant's trial. *See id.* at 30.

During the first trial, Appellant's trial counsel was clearly aware of the Commonwealth's agreements with Kerley and Clark. Trial counsel's opening statement addressed Kerley and Clark's deals with the Commonwealth. *See* N.T. First Trial, 1/8-20/15, at 67-68. During his cross-examination of Kerly during the first trial, trial counsel questioned her regarding the deal that she was receiving. *See id.* at 336-38. Trial counsel also questioned Clark regarding her agreement as well. *See id.* at 382-83. Accordingly, the record is clear that, by the time of Appellant's first trial, the Commonwealth had already disclosed the deals it had with Kerley and Clark to Appellant's trial counsel.

As to the agreements made with Lane-Bryant and Lyons, former Deputy District Attorney Robert Schupansky, who was the prosecutor in charge of Appellant's trial, testified at the evidentiary hearing that there was no written agreement between the Commonwealth and Lane-Bryant or Lyons. *See* N.T. Evidentiary Hr'g, 2/14/22, at 80, 101-02, 105-06. He stated that he spoke to Appellant's trial counsel prior to trial and explained to him that the Commonwealth had offered a reduction in charges to both men in exchange for their testimony. *See id.* at 101-02, 105-06. Former Deputy District Attorney Schupansky testified that he explained the exact nature of the agreement to trial counsel prior to trial. *See id.*

Further, the record from Appellant's first trial makes clear that trial counsel was aware of the agreements with Lane-Bryant and Lyons. Trial counsel's opening statement referred to the pleas of both Lane-Bryant and Lyons as trial counsel characterized their deals as attempts to "save their own lives and throw [Appellant] under the bus." **See** N.T. First Trial, 1/8-20/15, at 67-68. Trial counsel later cross-examined both men regarding their deals with the Commonwealth. **See id.** at 294, 298-301, 494-95. Trial counsel also closed by stating that Kerley, Clark, Lane-Bryant, and Lyons all "lied their pants off to save their lives" pursuant to the deals that they made with the Commonwealth. **See id.** at 681.

Accordingly, the record is clear that, at the time of Appellant's first trial, trial counsel, who was Appellant's counsel at both trials, was well aware of the deals each of these witnesses had with the Commonwealth.[9] Since the record establishes that trial counsel was aware of these deals by the beginning of Appellant's first trial, Appellant has failed to show that the Commonwealth suppressed the plea agreements with these witnesses. **See Sandusky**, 203 A.3d at 1061-62.

### Ineffective Assistance of Counsel Claims

---

[9] We also note that, consistent with Former Deputy District Attorney Schupansky's testimony at the evidentiary hearing, Lyons did not decide to testify until just before the beginning of Appellant's first trial. **Compare** N.T. Evidentiary Hr'g, 2/14/22, at 102-03, 105-06 **with** N.T. First Trial, 1/8-20/15, at 14-27. During the exchange regarding Lyons' testimony, trial counsel did not voice any concerns about whether Lyons would be testifying pursuant to an agreement with the Commonwealth. **See** N.T. First Trial, 1/8-20/15, at 14-27.

Most of Appellant's remaining claims allege ineffective assistance of trial counsel. *See* Appellant's Brief at 2-4.

It is well established that:

to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

\*    \*    \*

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (citations and quotations omitted and formatting altered). Additionally, "[c]ounsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa. Super. 2021) (citation omitted).

**Failure to Impeach Claims**

Two of Appellant's claims allege trial counsel was ineffective for failing to impeach certain witnesses. *See* Appellant's Brief at 34, 52.

"It is well settled that a witness may be cross-examined as to any matter tending to show the interest or bias of that witness." *Commonwealth v.*

*Solano*, 129 A.3d 1156, 1175 (Pa. 2015). The defendant is entitled to "challenge the witness's self-interest by questioning him about possible or actual favored treatment by the prosecuting authority." *Commonwealth v. Causey*, 833 A.2d 165, 169 (Pa. Super. 2003) (citation and internal quotations omitted).

Additionally, evidence of a witness's conviction for a crime involving dishonesty or a false statement is generally admissible. Pa.R.E. 609(a). Specifically, "evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction . . . is within ten years of the trial date." *Solano*, 129 A.3d at 1175 (citation omitted and some formatting altered).

However, where counsel impeaches a witness regarding their motive and bias, the failure to impeach the witness with her *crimen falsi* conviction is not prejudicial. *See id.* at 1176 (citing *Commonwealth v. Small*, 980 A.2d 549, 565-66 (Pa. 2009)). Further, counsel is not ineffective for failing to impeach a witness in a particular way, if counsel impeached the witness in other ways. *See id.* at 1176 (citing *Commonwealth v. Dennis*, 715 A.2d 404, 408–09 (Pa. 1998)).

<u>Impeachment of Witnesses with Their Plea Deals</u>

Appellant claims that trial counsel was ineffective for failing to impeach his co-conspirators with the details of their agreements with the Commonwealth. Appellant's Brief at 52. Appellant argues that "while trial

- 17 -

counsel attempted to impeach on cross examination, it is apparent that trial counsel failed to clarify the nature of consideration each of the four 'incentivized' witnesses received in exchange for their testimony, nor did [trial counsel] object to closing argument of the Commonwealth that used the testimony of the four witnesses." **See id.** Appellant contends that trial counsel "focused very little on the actual language of the plea letters received by Ms. Kerley and Ms. Clark" and that "no competent lawyer that would have chosen not to use these documents to further impeach the witnesses regarding the true nature of their plea agreements." **See id.** at 52-53. Appellant asserts that there is a reasonable probability that the outcome of the trial would have been different had counsel "further impeach[ed] the witnesses in this manner." **See id.** at 53.

Here, the PCRA court concluded that "[t]rial counsel cross-examined each witness regarding the details of any plea agreements and the witnesses' potential for testifying against Appellant" PCRA Ct. Op. at 7.

Based on our review of the record, we discern no error of law or abuse of discretion by the PCRA court. **See Staton**, 184 A.3d at 954. At Appellant's second trial, Clark testified that she "technically" did not have a deal with the Commonwealth because she had not accepted it yet. **See** N.T. Second Trial, 3/23/15, at 241.[10] She testified that her charges had been reduced by the

---

[10] Appellant's second trial began on March 23, 2015 and concluded on March 26, 2015. The notes of testimony are continuously paginated but are dated
*(Footnote Continued Next Page)*

- 18 -

Commonwealth. *See id.* at 240-41. Trial counsel later impeached Clark with the letter the Commonwealth sent to her attorney setting forth her plea agreement. *See id.* at 244. At that time, Clark admitted she had a "tentative" deal with the Commonwealth. *See id.* at 244-45. Further, trial counsel also impeached Clark regarding a motive to fabricate. *See id.* at 242. Specifically, whether she was lying to protect her friend's little brother. *See id.*

Trial counsel also inquired about the charges that Kerley initially faced. *See id.* at 317-18. He then asked her if she was still charged with the most serious charges she faced, which were conspiracy and solicitation to commit murder. *See id.* at 318. Kerley replied that she was no longer facing those charges because she "didn't commit a murder." *See id.* Trial counsel later questioned Kerley about the inconsistency of her prior statements to police and, particularly, why her story changed once she was charged by police. *See id.* at 327-29, 331-32. Additionally, trial counsel raised Kerley's alleged motive to fabricate by inquiring about the relationship between the father of her child and Appellant. *See id.* at 322, 325-37, 330. Trial counsel also impeached her with her prior inconsistent statements to police. *See id.* at 327-29. At the conclusion of Kerley's testimony, trial counsel confirmed that Kerley's version of events changed after she was charged by police. *See id.* at 331-32.

---

separately and split into two volumes. Since the pagination is continuous throughout the dates and volumes, we refer only to the date the trial began and omit the volume numbers from the citation.

At Appellant's second trial, trial counsel asked Lane-Bryant why he was no longer facing a homicide charge after initially being charged with it. *See id.* at 271-72. Lane-Bryant initially denied having a plea agreement with the Commonwealth. *See id.* at 272. Trial counsel attempted to impeach Lane-Bryant with his prior testimony regarding the reduction of his charges from Appellant's first trial. *See id.* at 281-82. However, Appellant interrupted trial counsel's questioning resulting in Appellant being removed from the courtroom. *See id.* at 282. On recross, trial counsel again inquired whether it was a coincidence that Lane-Bryant was facing reduced charges now that he decided to testify. *See id.* at 291-92. Additionally, trial counsel cross-examined Lane-Bryant about his prior inconsistent statements to police and the presence of his DNA in the getaway vehicle. *See id.* at 273-82, 291. Finally, trial counsel inquired about Lane-Bryant's motive to fabricate and biases by confirming that Lane-Bryant's statements to police changed after he was charged with homicide and inquiring about Lane-Bryant's animosity towards Appellant. *See id.* at 280-81.

Trial counsel also inquired at the second trial regarding Lyons' plea agreement. *See id.* at 379-80. Lyons admitted that he had a tentative deal with the Commonwealth to face reduced charges. *See id.* Trial counsel also questioned Lyons' regarding his ability to recall the events. *See id.* at 373-74. Additionally, as he did with the other witnesses, trial counsel inquired about Lyons' prior inconsistent statements and the fact that his version of events changed once he was charged. *See id.* at 371-72.

Accordingly, the record supports the PCRA court's conclusion that trial counsel inquired about each of these witnesses' plea agreements with the Commonwealth. **See Staton**, 184 A.3d at 954. Further, the record reflects that counsel thoroughly cross-examined and impeached each witness in other ways such as with their motives to fabricate, prior inconsistent statements, and the effect being charged by police had on their versions of events. **See Solano**, 129 A.3d at 1176. No relief is due.

<u>Impeachment of Lateesha Jones's with Her Conviction</u>

Appellant's next claim is that trial counsel was ineffective for failing to impeach eyewitness Lateesha Jones with her prior conviction for forged securities. Appellant's Brief at 34. Appellant contends that forged securities is a crime of *crimen falsi* and that, by not impeaching her with it, he was prejudiced because only two witnesses, Lateesha Jones and co-conspirator Michale Lyons, testified that Appellant was the shooter. **Id.** at 34-38.

Here, the PCRA court concluded:

Although [trial] counsel failed to cross-examine the witness on her prior conviction for uttering forged securities, counsel thoroughly cross-examined the witness regarding her sobriety, biases, and inconsistencies. Any further undermining of the witness' credibility through the introduction of the unrelated *crim[e]n falsi*[] would have been minimal and would have to be considered in relation to the nine other witnesses who testified for the Commonwealth consistent with Jones'[s] testimony. Appellant was not prejudiced by counsel failing to introduce this *crimen falsi*[] evidence.

PCRA Ct. Op. at 5.

After a review of Jones's testimony,[11] we discern no abuse of discretion with the PCRA court's conclusion as it is supported by the record and free of legal error. *See Staton*, 184 A.3d at 954. Trial counsel thoroughly cross-examined Jones as to her sobriety and ability to observe at the time of the shooting, biases, and prior inconsistent statements. *See* N.T. Second Trial, 3/23/15, at 107-27. Since counsel thoroughly impeached Jones in other ways, he could not be ineffective for failing to introduce Jones's *crimen falsi* conviction. *See Solano*, 129 A.3d at 1176.

**Failure to Investigate Alibi**

Appellant claims that trial counsel was ineffective for "failing to investigate and litigate [Appellant's] alibi properly and fully." Appellant's Brief at 19. Specifically, Appellant's argument revolves around a photo, allegedly taken by Appellant's paramour at her apartment, which shows Appellant asleep on the couch. *Id.* at 19-20. The photo, along with testimony from Appellant's paramour, was admitted at trial to establish that Appellant could not have committed the murder because he was asleep on the couch at the time of the shooting. *Id.* This theory was undermined at trial by the testimony of Officer James McGee, who testified that he believed that the photo was fabricated based upon his search of Appellant's paramour's house as well as the fact that Appellant's paramour's phone settings could be used

---

[11] We note that the beginning of the Commonwealth's direct examination of Lateesha Jones was missing from the certified record on appeal. However, since Appellant's claim regarded trial counsel's failure to impeach Jones, the missing pages did not prevent our review.

to manipulate the metadata of the photo. *Id.* at 20-21. Appellant argues that trial counsel should have "consult[ed] with or offer[ed] testimony of an expert witness at trial to verify [his] alibi." *Id.* at 22.

Our Supreme Court has stated:

Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant. . . . [The] appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance [the] appellant's cause.

*Commonwealth v. Chimel*, 30 A.3d 1111, 1143 (Pa. 2011) (citing *Commonwealth v. Wayne*, 720 A.2d 456, 470 (Pa. 1998)) (some formatting altered).

Here, the PCRA court addressed this claim as follows:

Appellant has not produced an expert who has examined the phone in question. Appellant has merely speculated that evaluation of the phone would produce favorable evidence. Such evidence would then be measured against Det. McGee's testimony that the background of the photo does not match any area in [Appellant's paramour's] residence where the photo was purportedly taken. Furthermore, Det. McGee testified that he had the same model of phone as [Appellant's paramour] and was able to manipulate the date and time. [Trial] counsel could have reasonably believed that the alibi was not Appellant's best argument and the failure to go down the rabbit hole of forensic evaluation constituted the judicious use of limited resources. As such, [trial] counsel's failure to have the phone forensically evaluated does not meet the standard for ineffectiveness.

PCRA Ct. Op. at 4-5 (some formatting altered).

The PCRA court's factual findings and legal conclusions are supported by the record and free of legal error. **See Staton**, 184 A.3d at 954. Appellant fails to demonstrate that there was an available expert whose testimony would have advanced Appellant's alleged alibi defense. **See Chimel**, 30 A.3d at 1143. While Appellant submitted an expert report, the expert report merely establishes that there was an expert available who would have been able to verify whether the alibi photo contained any fraudulently generated or manipulated metadata, if they examined the phone. **See** Appellant's Rule 907 Response, 9/30/24, Ex. A. In the report, the expert conceded that "the testing Det. McGee[] described in his testimony successfully demonstrated that fraudulent date and time stamps can be generated by manipulating the date and time setting on [the particular phone used] before taking a photo." **Id.** The expert stated that, before concluding whether the alleged alibi photo was manipulated, he would have examined the phone used to take the photo. **Id.** Therefore, Appellant merely presents the report of an expert who would be able to examine the alibi photograph and not an expert who determined the photograph was authentic and not manipulated. Accordingly, Appellant fails to demonstrate that there was an expert available to rebut the suggestion that the alibi photo was manipulated. **See Chimel**, 30 A.3d at 1143.

Additionally, based upon the evidence adduced at trial, as the PCRA court noted,[12] counsel may have reasonably believed that wasting additional

_____

[12] **See** PCRA Ct. Op. at 5.

- 24 -

resources on a weak alibi defense was not a good tactical decision and, furthermore, Appellant cannot show prejudice. *See Sandusky*, 203 A.3d at 1043-44. Numerous witnesses placed Appellant at the scene of the crime. Lateesha Jones identified defendant as one of the men at the scene of the shooting. *See* N.T. Second Trial, 3/23/15, at 94-95. All four of Appellant's alleged coconspirators who testified placed Appellant at the scene. *See id.* at 226-28, 254-57, 303-04, 361. Additionally, Tyray Frenzley, who at the time of the incident knew Appellant through one of Appellant's alleged coconspirators, placed Appellant at the scene. *See id.* at 347-48. Accordingly, it was a reasonable tactical decision for counsel to forgo retaining an expert to definitively determine whether the alleged alibi photo was authentic and unmanipulated. *See Sandusky*, 203 A.3d at 1043-44. In any event, based upon the overwhelming evidence of Appellant's guilt including the witness testimony presented at trial, Appellant cannot show that trial counsel's failure to obtain an expert witness to verify his alleged alibi caused him prejudice. *See id.*; *see also Davis*, 262 A.3d at 596.

**Failure to Request Witness Identification Instruction**

Appellant's next claim is that trial counsel was ineffective for failing to "request specific witness identification instruction relating to whether [Lateesha] Jones'[s] identification was affected by the presence of a gun, whether [Jones] was intoxicated at the time of the identification, and whether the high levels of stress during the incident affected [Jones's] ability to give an accurate identification." Appellant's Brief at 54-55. Appellant argues that

the identification instruction given at trial "left out material and relevant factors that were contemplated by the Pennsylvania Supreme Court prior to the time of [Appellant's] trial and are now deemed standard by the Pennsylvania Standard Jury Instructions following revisions of the Eyewitness Identification Instruction in 2019." *Id.* at 55. While Appellant concedes that the standard jury instruction was not revised until 2019, after he had been convicted, he argues that counsel should have been aware of *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014), which was decided approximately ten months prior to his trial. *Id.* at 56-57. Appellant argues that, had trial counsel been aware of *Walker*, he would have known "cross-examination coupled with closing arguments is insufficient 'to convey the possibility of mistaken identification to the jury.'" *Id.* at 57-58 (quoting *Walker*, 92 A.3d at 786). Appellant argues that he was prejudiced by counsel's failure to request the instruction because Jones was "the key witness to [his] identification [as the shooter]." *Id.* at 58.

As this Court has previously stated:

We must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in phrasing its jury instructions, and can choose its own words as long as the law is clearly, adequately, and accurately presented to the jury for its consideration. The trial court commits an abuse of discretion only when there is an inaccurate statement of the law.

A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to

- 26 -

fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

***Commonwealth v. Postie***, 200 A.3d 1015, 1026 (Pa. Super. 2018) (citations omitted and some formatting altered). Trial counsel cannot be deemed ineffective "for failing to object to jury instruction where instruction is justifiable or not otherwise improper." ***Id.*** at 1027.

Here, the PCRA court concluded that the jury instruction given "clearly, adequately, and accurately states the law, [and] gives detailed instructions on how to parse testimony and factors to be considered when evaluating identification testimony." PCRA Ct. Op. at 6. The jury instruction given at trial reads as follows:[13]

> There was testimony that a witness or witnesses have identified [Appellant] as the person that committed the crimes. In evaluating that testimony, in addition to the criteria I just provided you with in judging the testimony of any witness, you should consider the following factors: Did the witness have a good opportunity to observe the perpetrator of the offense? Was there sufficient lighting for him or her to make his or her observations? Was the witness close enough to the individual to note any

_____

[13] We note that the jury instructions for Appellant's second trial are not part of the certified record on appeal. ***See Commonwealth v. Lopez***, 57 A.3d 74, 82 (Pa. Super. 2012) (stating that "it is an appellant's duty to ensure that the certified record is complete for purposes of review" and that "a failure to ensure that the record provides sufficient information to conduct a meaningful review constitutes waiver of the issue sought to be reviewed). However, the PCRA court quoted the entirety of the identification instruction in its Rule 1925(a) opinion and Appellant cites the exact language in his appellate brief. ***Compare*** PCRA Ct. Op. at 6 ***with*** Appellant's Brief at 53-54. Accordingly, we rely on the PCRA court's restatement of the instruction for our review. ***See Commonwealth v. Harper***, 890 A.2d 1078, 1080 n.1 (Pa. 2006) (relying on the trial court's representation of testimony where a transcript was missing from the certified record on appeal).

particular characteristics, physical, clothing or otherwise? Has the witness made prior identification of the perpetrator of these crimes in any other proceeding? Was the identification positive or was it qualified by hinging on inconsistencies?

During the course of the case, did the witness identify anyone else as the perpetrator? How often and on how many occasions has the witness been in the company of the alleged perpetrator? You may have received identification testimony with caution if you determine that any of the factors is compromised to the extent that it leads to belief the witness or witnesses. In considering whether or not to accept the testimony of an identification witness, you should consider all the circumstances under which the identification or identifications are made including the presence or absence of those factors. Furthermore, you should consider all the relevance of the evidence, including the testimony of any witness to which identity or non-identity of the perpetrator of the crimes is inferred. You must not find [Appellant] guilty unless you are satisfied beyond a reasonable doubt from all the evidence, direct and circumstantial, including identification testimony, not only that the crime was committed but it was [Appellant] that committed it.

PCRA Ct. Op. at 6 (citation omitted).

We agree with the PCRA court that the jury instruction clearly, adequately, and accurately stated the law at the time of Appellant's trial in 2015. While Appellant is correct that the current jury instruction was revised to include factors "contemplated" in *Commonwealth v. Walker* in 2019, nothing in *Walker* suggests that a trial court was required to include these items in a jury instruction. *See generally Walker*, 92 A.3d 766. Accordingly, had trial counsel requested a more detailed instruction, it was within the trial court's discretion to grant the request and the failure to grant such a request would not have been an abuse of discretion as the jury instruction given accurately stated the law. *See Postie*, 200 A.3d at 1026. Since the jury

- 28 -

instruction was proper, trial counsel could not have been ineffective for failing to request a more detailed instruction or by failing to object to the jury instruction as given. ***See id.*** at 1027; ***see also Davis***, 262 A.3d at 596.

## PCRA Court's Failure to Grant an Evidentiary Hearing

Appellant's final claim is that the PCRA court erred by dismissing his petition without conducting an additional evidentiary hearing after this Court's prior remand for the PCRA court to consider Appellant's new claims of ineffective assistance of counsel pursuant to ***Bradley***, 261 A.3d 381 (Pa. 2021). Appellant's Brief at 65. Appellant argues that the PCRA court's scheduling of a hearing, before ultimately not holding one, suggests that the PCRA court believed there were genuine issues of material fact that required an additional hearing. ***Id.*** at 66. Appellant claims that at the hearing he could have questioned trial counsel about his rationale for not hiring an expert witness. ***Id.*** at 68-69. Further, Appellant claims that he could have explored the merits of his ***Bradley*** claims at the hearing. ***Id.*** at 68.

It is well settled that

> [t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Maddrey***, 205 A.3d 323, 328 (Pa. Super. 2019) (citations and quotation marks omitted), *appeal denied*, 218 A.3d 380 (Pa. 2019).

- 29 -

A previous panel of this Court remanded this case with the following instruction:

> Therefore, we conclude that the best course of action is to vacate the July 26, 2022 order denying Appellant's PCRA petition and remand for the PCRA court to consider in the first instance the claims present counsel has raised pursuant to **Bradley**. We leave to the PCRA court's discretion the extent and manner of the additional evidence to be developed concerning the new claims. Thereafter, the PCRA court shall enter a new final order disposing of all claims Appellant has raised in connection with the instant PCRA petition, after which any aggrieved party may seek appellate review.

**Lawrence**, 309 A.3d at 156-57.

The previous panel was specifically concerned with Appellant's **Bradley** issues, which included "trial counsel's failure to investigate and litigate an alibi defense or to object to the trial court's identification jury instruction, as well as prior PCRA counsel's posturing of the claim concerning Ms. Jones's impeachment." **Id.** at 154.

The PCRA court concluded that "[s]ince the Superior Court did not require a hearing on Appellant's **Bradley** claims, and this court did not need additional testimony to address those issues, this court did not err in failing to hold an additional evidentiary hearing." PCRA Ct. Op. at 8. We discern no abuse of discretion as each of the issues identified by the prior panel of this Court were addressed in the PCRA court's Rule 1925(a) opinion. **See Maddrey**, 205 A.3d at 328. Further, we have concluded that each of those claims is without merit based upon the PCRA court's analysis. Accordingly, no relief is due.

- 30 -

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

9/19/2025